Wallace Lee BROWN, Movant,

v.

COMMONWEALTH of Kentucky,
Respondent.

Supreme Court of Kentucky.

Oct. 31, 1978.

Rehearing Denied Jan. 16, 1979.

Jack Emory Farley, Public Defender,
William M. Radigan, Asst. Public Defender,
Frankfort, for movant.

Robert F. Stephens, Atty. Gen., Martin
Glazer, Asst. Atty. Gen., Frankfort, for re-
spondent.

LUKOWSKY, Justice.

Brown was convicted of first-degree man-
slaughter in the Lincoln Circuit Court and
sentenced to imprisonment for eighteen
years. The trial judge instructed on mur-
der (KRS 507.020(1)(a) and (b)), first-degree
manslaughter (KRS 507.030(1)(a) and (b)),
second-degree manslaughter (KRS 507.-
040(1)) and reckless homicide (KRS 507.-
050(1)), and refused to instruct on the de-
fense of voluntary intoxication. The Court
of Appeals affirmed on the ground that

when instructions include offenses requiring intent and lesser degrees thereof which do not require intent, the effect of voluntary intoxication is to negate the intent and thus reduce the offense to the lesser charge, and consequently, no instruction on intoxication is required. We granted discretionary review to examine this issue in the light of our new Penal Code. We now reverse and remand for a new trial.

KRS 501.080 provides, "Intoxication is a defense to a criminal charge only if such condition . . . (1) negatives the existence of an element of the offense . . . ." KRS 507.020(1)(a) makes intent to kill an element of murder, KRS 507.030(1)(a) and (b) makes either intent to cause serious physical injury or intent to kill an element of first-degree manslaughter. KRS 507.-020(1)(b) makes wantonness an element of murder. KRS 507.040(1) makes wantonness an element of second-degree manslaughter. KRS 507.050(1) makes recklessness an element of reckless homicide.

■ KRS 501.020(3) and (4) provides that voluntary intoxication does not negative either wantonness or recklessness. Consequently, voluntary intoxication constitutes a defense only to intentional and knowing offenses and does not provide a defense to unintentional offenses.

■ It is significant that the drafters of the Penal Code took the time, trouble and space to exclude voluntary intoxication as a defense to those offenses which may be committed only by wanton or reckless conduct. This indicates to us that the drafters intended that a voluntary intoxication instruction should be given in cases which involve intentional or knowing offenses and lesser included unintentional offenses. To reach any other conclusion would be to render their effort at exclusion superfluous. To put it another way, they were telling us to give the instruction but limit its applica-

bility. Any of our post Penal Code cases which indicate a contrary conclusion do so only by way of obiter dictum and are not at variance with the result we reach here.

■ The instructions given by the trial judge were substantially in the form set forth in Section 2.01 of Palmore's Kentucky Instructions to Juries to the numbering of which we shall make reference in our further discussion. The evidence of Brown's state of intoxication adduced at trial was more than sufficient to require that the defense of voluntary intoxication be submitted to the jury.[1] If it is to be submitted and the mass of evidence on the subject is to have any comprehensible meaning to the jury it must be accompanied by an instruction in substantially the following form.

> Although you might otherwise find the defendant guilty of murder under Instruction 1(b)(i) or first degree manslaughter under Instruction 2(b), if at the time he killed X (if he did so) he was so drunk that he did not have the intention of committing a crime, you shall find him not guilty under those instructions.

The decision of the Court of Appeals and the judgment of the trial court are reversed and the cause is remanded to the Lincoln Circuit Court for a new trial.

All concur except CLAYTON, JONES and STERNBERG, JJ., who dissent.

JONES, Justice, dissenting.

The totality of the evidence presented in this case convinced me that Brown was not so intoxicated as to require the trial court to instruct on the defense of voluntary intoxication.

A neighbor, Eva Gooch, testified that in the early evening of September 20, 1975, Brown came to her home to call the rescue squad for Archie Boggs. She further testi-

---

1. Brown was described by the arresting officer as "pretty drunk", the Sheriff stated that he "was thick tongued, he repeated himself a right smart and was kinda wayward in his walk", and several of Brown's fellow revelers testified that he was drunk and had been drinking constantly since the day prior to the shooting. The blood alcohol test given Brown three hours after the shooting indicated an alcohol level of 0.29%. He claimed that he suffered a total lack of recollection of the shooting. *Mishler v. Commonwealth*, Ky., 556 S.W.2d 676 (1977); *Jewell v. Commonwealth*, Ky., 549 S.W.2d 807 (1977).

fied that approximately ten minutes later Brown returned and requested her to call the sheriff since "He had shot and killed Clyde Sears." The neighbor could not tell whether Brown had been drinking.

The neighbor was asked, "Did Wallace Lee Brown appear to be drinking at the time you saw him?" "You couldn't tell it." "Was he staggering around or was his speech slurred or anything of that nature?" "No, he was calm."

The city fire chief testified that he could smell the odor of alcohol and that Brown had been drinking when he admitted shooting Sears. He testified that Brown was not staggering too much.

The sheriff testified that Brown was able to walk by himself and got around and that he needed no help to go down the steps.

A deputy sheriff testified that Brown told him he shot a man and that Brown walked "good" up the steps unassisted and was not belligerent. He testified also that he did not detect the smell of alcohol.

A detective who took Brown's statement testified that Brown had been drinking and that he could smell it on him and his ability was somewhat impaired but not to the extent that he did not have control of his faculties.

The reversal of Brown's conviction with directions that he be granted a new trial, in my view, is an exercise in futility. An instruction on the defense of voluntary intoxication, more than likely will enhance his penalty.

In my opinion, the Court of Appeals correctly adjudged that no instruction on intoxication in this case was required. It affirmed on the ground that the trial court's instructions included offenses requiring intent and lesser included offenses which do not require intent. It also held that the effect of voluntary intoxication is to negate the intent and reduced the offense to the lesser included offenses.

For the reasons stated I respectfully dissent and conclude by saying that I would affirm the judgment of the Court of Appeals.

I am authorized to say that CLAYTON and STERNBERG, JJ., join in this dissent.