**Ronnie HALL, Movant,**

v.

**COMMONWEALTH of Kentucky, Respondent.**

**No. 90–SC–494–DG.**

Supreme Court of Kentucky.

Oct. 24, 1991.

Robert J.W. Howell, Appellate Public Advocate, Covington, for movant.

Frederic J. Cowan, Atty. Gen., Todd D. Ferguson, Asst. Atty. Gen., Criminal Appellate Div., Frankfort, for respondent.

SPAIN, Justice.

Ronnie Hall appeals his conviction by a jury in the Floyd Circuit Court of first-degree (armed) robbery, for which he was sentenced to confinement for fifteen (15) years. The Court of Appeals affirmed the judgment and we now do likewise, having granted discretionary review.

■ The first issue presented is whether the trial judge erred in not admonishing the jury *sua sponte* that the defendant's admission of a prior felony could only be considered as it might affect his credibility as a witness. Inherent in the statement of the issue is the fact that the defendant did not request such an admonition, as required by RCr 9.22.

Notwithstanding the lack of such a request, the defendant argues that under *Commonwealth v. Richardson*, Ky., 674 S.W.2d 515 (1984) the trial court must give the admonition *sua sponte*. The Court of Appeals correctly ruled otherwise. Defense counsel should be free to make as little of the admission by defendant of a prior felony conviction as possible. As a matter of trial strategy, it may be decided that the admonition would only serve to emphasize the conviction, and hence no admonition may be requested. If, on the other hand, a limiting admonition is desired, it need only be requested. Here there is an excellent indication that such trial strategy was employed, since it was the defendant's own attorney who elicited from him the fact of his prior felony. Apparently, this was done to "soften the blow," rather than having the prosecutor extract the disclosure. We agree there was no error on the part of the trial judge.

■ We recognize that the language used in *Richardson* is mandatory and does not expressly impose upon the defendant a duty to request an admonition. We are persuaded, however, that the omission of such a requirement in *Richardson* was inadvertent and that, consistent with general law and in particular the requirements of RCr 9.22, a defendant who wants the court to admonish the jury must ask for such relief; otherwise, his failure to request it will be treated as a waiver or as an element of trial strategy. The rule in *Richardson* is modified accordingly.

■ The only remaining issue is whether it was error for the trial court, during the punishment phase of the bifurcated trial, to admit testimony of the defendant's prior convictions based upon a certified Kentucky State Police computer printout. The Court of Appeals found no error, holding that the defendant's reliance upon our opinion in *Commonwealth v. Willis*, Ky., 719 S.W.2d 440 (1986) was misplaced. Again, we agree.

In *Willis* we held that a certified copy of a "Driving History Record" maintained by the Division of Driver Licensing of the Transportation Cabinet was not sufficient evidence of prior convictions for driving under the influence of alcohol at a trial of a subsequent D.U.I. offense. In so holding, a parallel was drawn with the decision in *Hobbs v. Commonwealth*, Ky., 655 S.W.2d 472 (1983), wherein a certified copy of the judgment of conviction was held necessary to prove either the date of or fact of previous offenses in Persistent Felony Offender proceedings.

Both these cases are distinguishable from the case at hand by the fact that there the proof of prior convictions was necessary to establish guilt; i.e., the fact of such convictions was an essential *element* of the crime charged. As such, proof beyond a reasonable doubt was required of the Commonwealth. Here, however, we are concerned only with the punishment or sentencing phase of the trial mandated by KRS 532.055 involving background information to assist the jury in its penalty-fixing responsibility. The statute authorizing the procedure does not specify a method for proving such prior convictions and we are of the opinion that the strict proof requirements of *Hobbs* and *Willis* are neither warranted nor required. The evidence of prior convictions introduced by the Commonwealth through the testimony of a probation and parole officer in the present case is the same type of information routinely incorporated in presentence investigation reports required under KRS 532.050

to be furnished to the trial judge prior to sentencing. In a sentencing hearing, the defendant is given the opportunity to suggest any corrections deemed necessary in the report. Similarly, here the defendant had an opportunity during the penalty phase of his trial to suggest any appropriate corrections to the KSP printout.

The holding under the *Hobbs* and *Willis* cases results from a strict application of the "best evidence" rule which requires that "if you would prove the contents of a writing, you must produce the writing itself." McCormick, *Law of Evidence* § 229 (2d ed. 1972). Justice Leibson observed in *Willis* at p. 441:

> The fact that a conviction has occurred is contained in the contents of a judgment. Thus the best evidence of the fact of conviction is the judgment setting out the conviction. . . .

While we have no quarrel whatever with the correctness of the above-quoted statement, we nevertheless question a like application in the present case. Professor Lawson in his *Kentucky Evidence Law Handbook*, § 7.15 (2d ed. 1984) cites the following language from *Catlin v. Justice*, 288 Ky. 270, 276, 156 S.W.2d 107, 110 (1941), as one of the best descriptions of the "best evidence" rule in Kentucky law:

> [I]n modern practice [the Rule] is generally confined to the substitution of oral testimony in proof of an existing document. If the content of the written document is in issue or if the very existence of the document itself is in controversy, the document must be produced or its absence accounted for. But the rule has never been extended to require evidence of facts that may as well be established by oral testimony; that is to say, oral testimony of a fact in issue may be primary evidence of the fact, although there be in existence written evidence of the same fact, and, where the essential fact to be proved is neither the existence nor the contents of the writing, but some independent fact to which the writing is merely incidental, the writing need not be produced but the proof may be adduced by oral testimony.

Lawson continues with the following additional comments:

> Two important characteristics of the best evidence rule are identified by this quotation. One is that the rule is limited in its application to documentary evidence. The other is that even with respect to documentary evidence the rule is applicable only to proof **of the contents** of a writing. Wigmore's description of this limitation cannot be improved upon: "[T]he rule applies to exclude testimony designed to establish the **terms** of the document, and requires the document's production instead, but does not apply to exclude testimony which concerns the document without aiming to establish its terms." (Emphasis in the original. Footnotes omitted.)

We think it is critical to remember that the rule is only necessary to guarantee the trustworthiness of the evidence when the *"content* of the written document is *in issue* or if the *very existence* of the *document itself* is *in controversy* . . . . (Emphasis added.) Examples which rush to mind include the *contents* or *terms* of a deed, a lease, or a will.

In the present case, there is no *dispute* whatever as to the defendant's prior convictions; no *issue*, if you will, as to the contents of a writing. The judgment itself is but a memorandum of the fact that the defendant was tried by a jury or judge who returned a finding of guilt and fixed a certain punishment.

Furthermore, as was pointed out by the prosecutor in a colloquy which accompanied the introduction of the KSP printout:

> We have a certified copy of the printout kept in the ordinary course of business by the state police, which makes an exception to the hearsay rule because it is kept as a business document and a certified copy is adequate. (TE 204.)

In view of all of the above, the judgment of the Floyd Circuit Court is affirmed.

LAMBERT, REYNOLDS and WINTERSHEIMER, JJ., concur.

LEIBSON, J., dissents by separate opinion in which STEPHENS, C.J., and COMBS, J., join.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

The bottom line in the Majority Opinion is that we need not be concerned whether evidence offered by the Commonwealth in the penalty phase of a criminal case qualifies as competent under the rules of evidence. We seem to grow increasingly impatient with any obstacle to extracting the maximum sentence from the jury.

The Majority opines that in the truth-in-sentencing statute, KRS 532.055(2)(a), the word "evidence" means no more than "background information" from whatever source. The Majority acknowledges that the purpose of such "background information [is] to assist the jury in its penalty-fixing responsibility," yet opines that "strict proof requirements ... are neither warranted nor required."

In Kentucky, the penalty phase of a criminal trial is now, as it always has been, as much a part of a criminal trial as the guilt phase. I am shocked to learn inadmissible evidence is appropriate to prove anything in a jury trial. Nor do I believe the General Assembly contemplated that the word "evidence" in KRS 532.055(2)(a) (where the statute states that certain specified "[e]vidence may be offered by the Commonwealth relevant to sentencing"), would or could mean anything less than evidence *competent* under the rules of evidence.

The Majority's analogy to a trial court's post-trial use of a presentence investigation (PSI) report prepared as per KRS 532.050(2) is both seriously flawed and an alarming disregard for what is required by due process for a trial to be conducted according to law. A PSI report is by statutory definition full of hearsay, rumor, speculation and opinion. It is simply a probation officer's "analysis of the defendant's history," and its contemplated use is only *after* a sentence has already been *fixed* either by a jury in its verdict or by agreement in a plea negotiated between the defendant and the Commonwealth. It is simply a tool so the trial judge can consider whether to mitigate the sentence or reject the negotiated plea. Upon its use, if the plea is rejected the defendant is permitted to withdraw his plea and stand trial, rather than submit to an enhanced sentence. RCr 8.10.

As the Majority Opinion concedes, we have already held in *Commonwealth v. Willis*, Ky., 719 S.W.2d 440 (1986), that where the Commonwealth offers proof of prior convictions for driving under the influence of alcohol at a trial of a subsequent DUI offense, proof must be by *competent* evidence; and in *Hobbs v. Commonwealth*, Ky., 655 S.W.2d 472 (1983), where the Commonwealth offers proof of previous offenses in the persistent felony offender phase of a criminal trial, proof must be by *competent* evidence. Where is the distinction? If one is to be made, it must be artificially contrived.

When the General Assembly used the word "evidence" in structuring KRS 532.055(2)(a), it must be conclusively presumed that it meant evidence admissible in a court of law. If the statute had been worded in terms of "background information" which need not be reliable in the same sense as evidence admissible in conformity with the rules of evidence, I doubt this Court would countenance the statute's shortcomings.

Yet, obviously the Majority realizes the shortcomings inherent in the Opinion, because, after dispensing with the requirements for admissibility found in the rules of evidence, the Majority then attempts a flawed explanation of (1) why the best evidence rule should *not* apply here and (2) why the business records exception to the hearsay rule should apply here. The flaws in such reasoning should be too obvious to warrant serious discussion, but I will address them briefly.

A judgment of conviction is nothing more than or different from any other court order, and the best evidence rule surely applies to a court order. As with the Department of Transportation printout in *Willis*, the probation officer's records in *Hobbs*, and the Corrections Cabinet's records in

*Garner v. Commonwealth,* Ky., 645 S.W.2d 705 (1983), the records used here to prove prior convictions were inadmissible hearsay: not matters within the personal knowledge of the witness and not a judgment of conviction qualifying under the best evidence rule as proof of its existence and contents.

It is even more a certainty that these matters do not qualify under the business records exception to the hearsay rule. It may well be that "we have a certified copy of the printout kept in the ordinary course of business by the state police," as the Majority Opinion says. But to qualify as admissible under the business record exception this state police printout must first be a "record ... made at or near the time [of the 'event'] by, or from information transmitted by, a person with [first hand] knowledge." Federal Rules of Evidence, 803(6). *See* also Lawson, *The Kentucky Evidence Law Handbook,* § 8.65 III(C) (2nd Ed.1984), and cases cited therein. The evidence on this state police printout was not just hearsay, but hearsay on hearsay, gathered from unidentified sources. It is little more than a FBI rap sheet, and probably shares the same degree of reliability.

Nor is it an acceptable response to suggest that it matters not the lack of quality of the evidence because "the defendant is given the opportunity to suggest any corrections deemed necessary." Have we regressed so badly that we will now permit a witness to repeat unsubstantiated hearsay because the defendant will be permitted to take the stand and respond?

I am reminded of a paragraph from a treatise by J. Grossman and R. Wells, *Constitutional Law and Judicial Policy Making,* p. 11 (3rd Ed.1988):

"The difference ['between law and politics'] can be appreciated best as a distinction in the justification of legal and political decisions. The primary and proper justification of legal decisions ... is one of procedure and method, of means and not ends. The strength, and ultimately the legitimacy, of law and the courts lies in the establishment and application of fair, predictable procedures, not in producing any particular result.... It is only when judges objectively apply 'neutral' principles that ... decisions are entitled to legitimacy and respect."

I share with my colleagues their concern with the seeming inability of the legal system to deal with the ever-increasing crime problem, but surely it will not benefit the system to abandon the judicial process. The means used here do not justify the ends.

STEPHENS, C.J., and COMBS, J., join this dissent.