# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D),  THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE  ACTION.

RENDERED: MARCH 19, 2026
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2025-SC-0001-MR

RYAN HATFIELD                                                                          APPELLANT

V.

ON APPEAL FROM CLAY CIRCUIT COURT
HONORABLE OSCAR G. HOUSE, JUDGE
NO. 22-CR-00101

COMMONWEALTH OF KENTUCKY                                          APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

This case is before the Court as a matter of right following the conviction of the Appellant, Ryan Hatfield, for first-degree sodomy and first-degree sexual abuse. He was sentenced to forty-five years in prison. He now appeals arguing the jury was improperly instructed on first-degree sexual abuse because there was no evidence of sexual contact; second, an inflammatory photograph irrelevant to the charges at trial was admitted into evidence; and, finally, failure to establish chain of custody for the evidence extracted from his cell phone. For the following reasons, we affirm.

Hatfield began living with his girlfriend (whom we also identify as Mother) in early 2021. Hatfield brought along three children from a previous marriage,

and his girlfriend had a six-year-old daughter from a previous marriage, L.T.[1] The couple also had a child together—a son born later that year. In June 2022, Hatfield's ex-wife sent him a nude photo via a social media app which his girlfriend observed. Suspecting infidelity, she went through his phone the next morning. She discovered a photo portraying L.T.'s exposed buttocks with an erect penis in the foreground of the photo, with Hatfield's hand gripping his penis and him "on top of" L.T. She also discovered a video of L.T. performing oral sex on his penis. She went to the police later that morning after Hatfield went to work, and he was arrested later that afternoon after work.

Hatfield was interviewed by Chief Deputy Clifton Jones of the Clay County Sheriff's Office. Jones testified when asked if he wanted to discuss the case, Hatfield declined, stating "you've got it all on the phone, that's all you need." Jones testified Hatfield gestured to his cellphone when making the statement.

Hatfield ultimately went to trial on one count of first-degree sexual abuse and one count of first-degree sodomy. L.T. did not testify. L.T.'s mother did testify, identifying her daughter in the photo based on her clothing, and identifying the area the photo was taken in, the bathroom, based on décor and tiling. She also identified Hatfield from her knowledge of his penile anatomy and a scar on his arm. Once the video was played in full, L.T.'s mother again confirmed Hatfield's identity based on his voice.

---

[1] We use initials to protect the identity of the victim. We also omit the name of her mother as further precaution.

During trial, a photo of Hatfield's infant son with his mother was shown to the jury. The infant was naked, and she was holding the baby up. Mother testified she was unaware the photo had been taken and that she would not have wanted it to be taken. Hatfield made no objection to the photo at trial, but now argues it was irrelevant and prejudicial because it had no relation to the charges against L.T., nor was there any accusation or evidence that Hatfield had abused any of his own biological children. The Commonwealth responds the photo was one of several displayed to the jury during a period of fifteen minutes, and the photo was only displayed for a total of thirty-four seconds. The Commonwealth concedes the photo is irrelevant but argues that because there was no sexual connotation to the photo, it was not prejudicial and "nothing more than a diversion."

Also, during trial an issue was noted regarding how the evidence of the photo and video were extracted from Hatfield's phone. Deputy Jones testified the Kentucky State Police had a backlog so the phone was sent to London for law enforcement officers working in the High Intensity Drug Trafficking Areas (HIDTA) program to extract the data. Deputy Jones testified the phone was given to HIDTA, they extracted the data, downloaded it to a "flash drive" and then returned the phone with the flash drive to him, where the evidence remained in custody. Hatfield's trial counsel objected, arguing Jones referred to a "flash drive" but what was presented at trial was a "small drive." Deputy Jones clarified his reference to the "flash drive" was to the "small drive." The

3

trial court repeated that understanding. Defense counsel then stated he had no objection to the "small drive" being admitted into evidence.

Finally, regarding the jury instruction for sexual abuse, Hatfield did object to this instruction when the opportunity arose but specifically on the issue that the instruction misidentified the location of the sexual abuse. The proposed jury instruction identified the area as "the bedroom" when it should have been "the bathroom." The Commonwealth agreed, and the trial court made the correction. No other argument regarding the jury instruction was presented. Defense counsel told the trial court he had no other objection to the instruction. Hatfield now argues the photo did not establish sexual contact as required for first-degree sexual abuse; therefore, there was no evidence to justify giving the instruction.

After twenty minutes of deliberation, the jury found Hatfield guilty of both counts, recommending ten years in prison for first-degree sexual abuse, thirty-five years in prison for first-degree sodomy, and that the sentences be served consecutively. The trial court imposed the sentence. We now consider the merits.

As to the jury instruction, we find this issue waived. As we have consistently held now for several years, "[b]y expressly agreeing to the jury instructions . . . [the defendant] waived his ability to now challenge those instructions on appeal." *Sanchez v. Commonwealth*, 680 S.W.3d 911, 930 (Ky. 2023); *see also Boggs v. Commonwealth*, 718 S.W.3d 651, 659 (Ky. 2025). Once

the issue regarding the correct location of the sexual abuse was resolved, defense counsel told the trial court he had no other objection.

Briefly though, even were we to review, we would not find palpable error. Sexual abuse in the first-degree only requires sexual contact. KRS[2] 510.110. That term means "the touching of a person's intimate parts or the touching of the clothing or other material intended to cover the immediate area of a person's intimate parts, if that touching can be construed by a reasonable person as being done[.]" KRS 510.010(7). It is a "fundamental principle that a jury verdict may properly be based upon reasonable inferences drawn from the evidence." *Moore v. Commonwealth*, 462 S.W.3d 378, 388 (Ky. 2015). Inferring sexual contact from a photograph portraying a child's nude buttocks, while the defendant's erect penis is hovering over the victim, being gripped by the man, is not a leap of logic or speculation. Nor is it among those "inferences that build upon inferences in an unreasonable manner." *Southworth v. Commonwealth*, 435 S.W.3d 32, 46 (Ky. 2014).

The Commonwealth persuasively argues, "the jury could infer that Hatfield was the party that removed L.T.'s clothing and placed her in the position she was in—which was most certainly done for Hatfield's sexual gratification." As we have long adhered to in our understanding of sexual contact, "[a]n actual touching is required, but the contact need not be directly with the body." *Bills v. Commonwealth*, 851 S.W.2d 466, 471 (Ky. 1993). Nor does it require contact with a sexual organ. *Id.* Not every profane photograph of

---

[2] Kentucky Revised Statutes.

5

an alleged sexual abuse victim will justify, in and of itself, an inference of sexual contact. The photograph here, however, shows the victim in a state of undress, buttocks exposed, in close proximity to Hatfield's erect penis—close enough to be captured in the same frame. Such a photograph does put it "within the province of the jury to determine by method of reasonable inference whether the situation . . . amounted to sexual contact." *Id.* Thus, no palpable error.[3]

As to the photograph portraying Hatfield's infant son with his mother, the Commonwealth concedes its irrelevancy. The issue was unpreserved, however, and we agree with the Commonwealth the photo was only portrayed for a short amount of time amongst numerous other photographs over a fifteen-minute period, none of which are now objected to. Although Mother's testimony that she was unaware of the photo being taken and would not have wanted such a picture taken is suggestive of a nefarious purpose in the context of a sex crime trial, we simply do not believe displaying the picture to the jury amounts to a manifest injustice such that a substantial possibility of a

---

[3] It is also worth remembering that a photograph necessarily captures but one fleeting moment in time. Were the issue narrowly concerned only with whether the photograph depicted sexual contact then the answer would unequivocally be no. But that is not the issue. The issue at trial is whether the event—Hatfield's conduct toward L.T. in the bathroom at the time when the photograph was taken—involved sexual contact. The photograph is direct evidence of what occurred during the event at one point in time, from which the jury may make reasonable inferences about the rest of the event. *See Miller v. Commonwealth,* 283 S.W.3d 690, 697 (Ky. 2009) (citing *Williams v. Commonwealth,* 261 S.W. 18, 19 (Ky. 1924)).

different result at trial would have existed had it not been shown. *Johnson v. Commonwealth*, 676 S.W.3d 405, 417 (Ky. 2023).

We must take into account the weight of the evidence. *Id.* Although Hatfield argues the photo was admitted into evidence and taken back with the jury in their deliberations (along with all the other evidence), that does not alter our conclusion. Hatfield was positively identified in both the photo and video of L.T. based on his penile anatomy, physical scarring, and voice. His only defense was that his girlfriend framed him, which the Commonwealth correctly notes would have required the jury to believe L.T.'s mother arranged for her abuse by another man bearing a remarkable resemblance to Hatfield and documenting the abuse on Hatfield's phone unbeknownst to him. Although the photo of his infant son was irrelevant, therefore erroneous, its admission is not an error that "threatens the integrity of the judicial process." *Id.*

Finally, as to the chain of custody issue, we do not agree the issue is waived. The discussion at the trial court focused on correctly identifying the "flash drive" or "small drive." That issue was resolved at trial. Now Hatfield makes the unpreserved argument that a member of HIDTA should have testified as to the process of data extraction and various other details of that process for purposes of authentication under Kentucky Rule of Evidence 901. The issues are separate, but we will not engage in "the sort of unfettered review of the record and of the trial court's rulings that indicates a de novo review[,]" or even an abuse of discretion review due to the lack of preservation. *Miller v. Eldridge*, 146 S.W.3d 909, 917 (Ky. 2004).

Our most recent comment on authentication of digital cell phone extraction evidence came in *Baldwin v. Commonwealth*, -- S.W.3d --, 2025 WL 2671451 (Ky. 2025). In that case, this Court unanimously found the extracted data was properly authenticated despite the lack of a technical expert who performed the data extraction testifying. *Id.* at *11. A majority of this Court found the data properly authenticated based on the testimony of two officers and a Certification by an employee of the company that performed the data extraction. *Id.* at *15. A minority of the Court concurred but specifically disagreed with including the Certification as part of the authentication analysis because it deemed the Certification inadmissible. *Id.* at *22 (Nickell, J., concurring). Nonetheless, the minority agreed the testimony of the two officers satisfied the authentication requirement and, therefore, found harmless error. *Id.* at *23.

Notably, *Baldwin* involved preserved objections; thus, its analysis was much more rigorous and thorough. The lack of an objection below means the testimony regarding the chain of custody was only what the Commonwealth deemed necessary to forestall an objection on those grounds, which it evidently succeeded in doing. Deputy Jones testified to sending the cell phone to the HIDTA and testified generally as to how the cell phone and flash drive were preserved in the Sheriff's Department's custody. Although there is no testimony whatsoever regarding the security procedures and chain of custody at HIDTA, or how the data was extracted at HIDTA, it is also pure speculation that the data was corrupted, compromised, doctored, or planted. "Speculation and

8

innuendo are not proper bases for an appellate court to reverse a criminal conviction." *Chapman v. Commonwealth*, 265 S.W.3d 156, 173 (Ky. 2007). We will not find palpable error based on Hatfield's belated and unfounded suggestion that something was amiss or went awry at HIDTA that impacted the evidence at trial.

The convictions and sentence of Hatfield are affirmed.

All sitting. All concur.


COUNSEL FOR APPELLANT:

Travis Bewley
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Matthew R. Krygiel
Assistant Attorney General