Dana Tony **BANKS**, Appellant,

v.

**COMMONWEALTH** of Kentucky,
Appellee.

No. 2009–SC–000161–MR.

Supreme Court of Kentucky.

June 17, 2010.

Julia Karol Pearson, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, William Bryan Jones, Assistant Attorney General, Office of the Attorney General, Office of Criminal Appeals, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice VENTERS.

Appellant, Dana Tony Banks, appeals from a judgment entered upon a jury verdict by the Hardin Circuit Court convicting him of nine counts of first-degree sodomy, five counts of incest, and four counts of first-degree sexual abuse. He was sentenced to a total term of life imprisonment. Banks now appeals as a matter of right. Ky. Const. § 110(2)(b).

Before us, Banks raises various arguments relating to the sufficiency of the evidence and the jury instructions. More specifically he contends that he was entitled to a directed verdict on the sodomy charges, that the sodomy instructions were insufficiently differentiated, that he was entitled to a directed verdict on the incest charges, and that the jury was improperly instructed on the sexual abuse convictions. For the reasons stated below, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

Banks has two daughters, C.B., born on July 15, 1996, and T.B., born on April 20, 1995.

On June 9, 2005, Kentucky State Police received a complaint of possible sexual crimes committed by Banks against his two daughters. Later that day, Banks made a statement to Detective David Norris during which he admitted to committing sex acts upon the children, including acts of sodomy. He confessed that he engaged in criminal sexual conduct against the children for about a three-year period extending from March 2002 to March 2005. Detective Norris asked Banks how many times this occurred and Banks responded about six times with each daughter. During the course of the investigation, Banks made additional statements confessing to sexual crimes committed against the children.

On February 27, 2007, Banks was indicted on twelve counts of first-degree sodomy, six counts of incest, and six counts of first-degree sexual abuse. As further discussed below, at trial the children testified generally to instances of sexual abuse, but for the most part were unable to recount specific dates or distinguishing details concerning the crimes. Banks's confessions were admitted, but those statements likewise contained little in the way of distinguishing details, although they did identify that the last occasion occurred in March 2005 on an occasion when he ingested ecstasy. The medical evidence was inconclusive regarding whether the children had been sexually abused. After the Commonwealth completed its case, Banks rested without calling any witnesses on his behalf.

Before the case was submitted to the jury, the Commonwealth dismissed two counts of first-degree sodomy, one count of incest, and two counts of first-degree sexu-

al abuse. The jury returned guilty verdicts on nine of the ten remaining counts of first-degree sodomy, five counts of incest, and four counts of first-degree sexual abuse. The jury recommended punishments of life imprisonment for each sodomy count, ten years' imprisonment for each incest count, and five years' imprisonment for each sexual abuse count, and recommended that the sentences run concurrently. On February 24, 2009, the trial court entered a judgment consistent with the jury's verdict and sentencing recommendation. This appeal follows.

## I. SUFFICIENCY OF THE EVIDENCE—SODOMY

■ Banks contends that the Commonwealth presented insufficient evidence to convict him of the nine sodomy counts,[1] and thus the trial court erred by denying his motion for a directed verdict. Banks was indicted for twelve counts of sodomy, six against each child. One count against each child was dismissed prior to submission of the case to the jury. The jury acquitted Banks of one of the remaining ten counts, resulting in a total of nine sodomy convictions.

■ On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky.1991). If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. *Id.* For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserve for the jury questions as

to the credibility and weight to be given to such testimony. *Id.* "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Id.* (citing *Commonwealth v. Sawhill*, 660 S.W.2d 3 (Ky.1983)). "[T]here must be evidence of substance, and the trial court is expressly authorized to direct a verdict for the defendant if the prosecution produces no more than a mere scintilla of evidence." *Benham*, 816 S.W.2d at 186–87.

The evidence presented to support the sodomy charges is as follows. Detective Norris testified concerning his June 2005 interview with Banks and played an audio tape of the statement. In this statement, Banks described sexually abusing the children. Banks testified that he would go into the children's rooms while they were asleep, start touching and rubbing them, and then commit acts of sodomy against them. Specifically, he confessed that he would digitally penetrate, make oral contact with, and lay his penis on their anuses. Banks stated that he did this over a three-year period. The one specific date he identified as engaging in the conduct was March 17, 2005, on an occasion when he ingested ecstasy. When asked how many times the abuse occurred over the three-year period, Banks responded about six times with each child.

T.B. had a very difficult time testifying. She testified that "things happened" when she was eight or nine and attending a certain elementary school. Due to her difficulty testifying she was excused from the stand but later returned. With continued difficulty she then testified that Banks

---

1. In his brief Banks addresses his sufficiency of evidence argument on the sodomy counts and his challenge to the sodomy instructions together under Argument I. For clarity, we address the two arguments in separate sections. Banks' arguments concerning the sodomy instructions are addressed in the following section.

"raped" her while the family was living in Elizabethtown. She testified that the "rape" happened "at night" when no one else was around. She said she was around six when it happened. T.B. also testified to an occasion when she felt something "wet" on her "rear end." She stated that she was sure that what she felt was Banks's tongue. T.B. also testified regarding an occasion in the first grade when she had to stay home from school because of an eye infection and Banks did something to her, but did not describe specific acts which occurred on that occasion. She also referred to an occasion when she and her sister had scratched up their bed, but again did not provide specifics about what Banks did on that occasion.

C.B. testified that she had witnessed "something happen" between T.B. and Banks in her room. She further testified that things would happen between her and Banks "during the day" and at night, but she could not remember how many times those things happened. She also testified that Banks "raped her" when she was seven or eight; she at first said she was not sure how many times it happened, but then testified it happened "once a day and just one time at night." C.B. testified that she would be asleep when she would feel Banks begin to touch her "with his hands and with his private." She testified that Banks would "put his private inside" the "private" between her legs and "sometimes stuck his hand up her butt." She then testified concerning an event that occurred in her parents' room during which she witnessed Banks "put his private inside" T.B., she thought "in the back." She did

not remember how old she was but believed T.B. was six or seven at the time.

Pursuant to *Benham*, we assume Banks's confession to be true; that is that he committed acts of sodomy against each of his daughters as admitted in his statement to police.[2] Banks confessed that he did this on about six occasions against each daughter, and from this we draw the inference that he did, in fact, commit a total of twelve acts of sodomy against his children during the three year period from March 2002 to March 2005. C.B. and T.B. corroborated Banks's confession with their testimony of multiple instances of abuse. Upon drawing all inferences from the evidence in favor of the Commonwealth, we cannot conclude that it was unreasonable for the jury to have found the defendant guilty of nine counts of sodomy. There was sufficient evidence presented by the Commonwealth to submit the case to the jury. *Id.* The trial court did not err by denying Banks's motion for a directed verdict on the sodomy charges.

## II. THE SODOMY INSTRUCTIONS SUFFICIENTLY DIFFERENTIATED BETWEEN INCIDENTS EXCEPT IN TWO INSTANCES

■ Citing *Miller v. Commonwealth*, 283 S.W.3d 690 (Ky.2009), Banks next contends that the jury instructions pertaining to the sodomy counts insufficiently distinguished the incidents so as to assure an unanimous verdict as to the convictions.

■ "[I]t is now settled that a trial court errs in a case involving multiple charges if its instructions to the jury fail to

2. RCr 9.60 provides that a confession not made in open court will not warrant a conviction unless corroborated by other proof that such an offense occurred. Here, the children's testimony provides the necessary corroboration. *Lofthouse v. Commonwealth*, 13 S.W.3d 236 (Ky.2000) (requirement that defendant's out-of-court statements must be corroborated to support conviction relates only to proof that a crime was committed, not to whether the defendant committed it; once the corpus delicti has been established, the fact that the defendant committed the crime can be proven entirely by his own confession).

factually differentiate between the separate offenses according to the evidence." *Id.* at 695. If the jury instructions do not include factual differentiation between the charges, it is reversible error, even if the error is unpreserved. *Id. See also Harp v. Commonwealth*, 266 S.W.3d 813 (Ky.2008), *Bell v. Commonwealth*, 245 S.W.3d 738, 744 (Ky.2008) (overruled on other grounds by *Harp*, 266 S.W.3d 813); and *Miller v. Commonwealth*, 77 S.W.3d 566 (Ky.2002).

In reviewing the sodomy instructions, we first list those relating to T.B., followed by those relating to C.B. In the caption of each instruction the indictment count no. and the instruction no. were listed; that information is indicated as the lead-in to each instruction presented below. Further, each jury instruction began with the preamble "You will find the Defendant guilty of First–Degree Sodomy under this instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:"; and concluded with the paragraph "AND B. That at the time of such intercourse, [the child] was less than 12 years of age." We omit this repetitive language. Finally, language that is distinguishing in factual detail from the other sodomy instructions is emphasized.

*T.B. Sodomy Instructions*

*Count 1* / Instruction No. 5—A. That in this county *during a period of time from the 17th day of March, 2002, through the 17th day of March, 2005, and when T.B. was age 6*, while T.B. was sleeping and before the finding of the Indictment herein, he engaged in deviate sexual intercourse with T.B. *by placing his tongue on her anus;*

*Count 2* / Instruction No. 6—A. That in this county *on or about the 17th day of March, 2005*, while T.B. was sleeping and before the finding of the Indictment herein, he engaged in deviate sexual inter-course with T.B. *by making oral contact with T.B.'s anus.*

*Count 3* / Instruction No. 7—A. That in this county *during a period of time in 2005*, while T.B. was sleeping and before the finding of the Indictment herein, he engaged in deviate sexual intercourse with T.B. by *licking her anus.*

*Count 7* / Instruction No. 11—A. That in this county *during a period of time from the 17th day of March, 2002, through the 17th day of March, 2005, while T.B. was in her father's room* and before the finding of the Indictment herein, he engaged in deviate sexual intercourse with T.B. *by placing his penis in her anus. *BANKS WAS ACQUITTED OF THIS COUNT.*

*Count 8* / Instruction No. 12—A. That in this county *during a period of time from the 17th day of March, 2002, through the 17th day of March, 2005*, while T.B. was sleeping and before the finding of the Indictment herein, he engaged in deviate sexual intercourse with T.B. *by touching his penis to her anus.*

*C.B. Sodomy Instructions*

*Count 4* / Instruction No. 8—A. That in this county *during a period of time in 2005*, while C.B. was sleeping and before the finding of the Indictment herein, he engaged in deviate sexual intercourse with C.B. *by licking her anus. *THIS INSTRUCTION IS THE SAME AS INSTRUCTION 10.*

*Count 5* / Instruction No. 9—A. That in this county *during a period of time from the 17th day of March 2002, through the 17th day of March 2005*, while C.B. was sleeping and before the finding of the Indictment herein, he engaged in deviate sexual intercourse with C.B. *by licking her anus.*

Count 6 / Instruction No. 10—A. That in this county *during a period of time in*

*2005,* while C.B. was sleeping and before the finding of the Indictment herein, he engaged in deviate sexual intercourse with C.B. *by licking her anus. *THIS IN-STRUCTION IS THE SAME AS IN-STRUCTION 8.*

*Count 10 /* Instruction No. 14—A. That in this county *during a period of time from the 17th day of March, 2002, through the 17th day of March, 2005, while C.B. was in her father's room* and before the finding of the Indictment herein, he engaged in deviate sexual intercourse with C.B. *by placing his penis in her anus.*

*Count 11 /* Instruction No. 15—A. That in this county *during a period of time from the 17th day of March, 2002, through the 17th day of March, 2005,* while C.B. was sleeping in her room and before the finding of the Indictment herein, he engaged in deviate sexual intercourse with C.B. *by touching his penis to her anus.*

The jury instruction conference between the trial court, defense counsel, and the Commonwealth demonstrated an awareness that differentiation between the instructions was required to comply with Kentucky law, and this concern was translated into the jury instructions, beginning with the differentiation of each instruction by relating it to a separate count in the indictment.

Banks argues that there is overlap in Instructions No. 6 and No. 7 in relation to the time period when the criminal acts occurred.[3] Instruction No. 6 refers to the act addressed in that instruction occurring "on or about the 17th day of March, 2005," and Instruction No. 7 refers to the act occurring "during a period of time in

2005." Obviously, there is an overlap between the two time periods. Additionally, the acts described—"by making oral contact with T.B.'s anus" in Instruction No. 6, and "by licking her anus" in Instruction No. 7—are for all intents and purposes synonymous. Banks contends that this overlap in time and conduct violates the distinguishment requirements of *Miller.* We agree.

■ An examination of *Miller* discloses that its principal purpose is to ensure that the instructions for each count are distinguishable enough to permit the jury to relate each verdict to a specific crime shown by the evidence. Clearly, simply varying the words of the instruction for each count, without any substantive difference in meaning, does not satisfy *Miller.* However, the test is not simply one of mutual exclusivity. So long as the instruction for each count enables the jury to identify the instruction with a specific crime established by the evidence and avoids the likelihood of confusion with other offenses presented against defendant in the same trial, then the instructions are adequately differentiated. Here, this standard was not met.

Except for the more specific date provided in Instruction 6, Instruction 6 and Instruction 7 are essentially identical. The conduct described is the same. There is no substantive difference between "making oral contact" and "licking." Moreover, "on or about the 17th day of March, 2005," as stated in Instruction 6, is encompassed within "during a period of time in 2005" as stated in Instruction 7. Because of this multiple overlapping, there is insufficient

---

**3.** He also refers to an overlap in time with respect to Instruction No. 5, which refers to "during a period of time from the 17th day of March, 2002, through the 17th day of March, 2005"; however, Instruction No. 5 also limits the time period for the act to when T.B. was

age six. T.B. was born April 20, 1995, and thus the act referred to could not have occurred in 2005. Because of the age limitation, there was no time overlap between Instruction 5 and Instructions 6 and 7.

differentiation to meet the requirements as explained in *Miller*.

While the Instructions are also differentiated by reference to the Count Number in the indictment, and the language of the indictment provided that the conduct identified in each count occurred "at a time different from" the conduct charged in any other count, it is unreasonable to suppose that the fleeting reference to this differentiation during the reading of the indictment would be sufficiently noted by the jury to instill confidence that the difference was remembered by the jury and considered in its deliberations. Under *Miller*, we would expect the instructions alone to adequately differentiate the offenses so that one need not cross-reference the indictment, which the jury would never see. In this vein, we note that if Instruction No. 7 had simply incorporated the language "at a time in 2005 other than March 17," there would have been sufficient differentiation to have satisfied the requirements of *Miller*. As such, we would counsel, as a final assurance of differentiation, that trial courts use this construct where additional clarity is needed.

While Instruction No. 6 and Instruction No. 7, in combination, failed to satisfy the requirements of *Miller*, nonetheless, it is necessary only that we vacate the conviction related to Instruction No. 7. By clearly identifying March 17, 2007, as the date of the crime in Instruction No. 6, we may have confidence that the jury unanimously voted that an act of sodomy occurred on that date. However, with respect to Instruction No. 7, we cannot say with confidence that one or more jurors did not vote for conviction under that Instruction based upon the March 17, 2005, conduct. We accordingly vacate the conviction related to Instruction No. 7. Upon retrial, if any, for the charge related to Instruction 7, the trial court should assure

that it is properly differentiated from any other charge.

██ An examination of the other individual sodomy instructions for T.B. reveals that there is complete differentiation between all instructions in terms of date, location, T.B.'s age, and conduct. Consequently, unlike *Miller*, there is an absolute distinction between the charges in these instructions so as to remove any chance that the jurors were unable to distinguish between the multiple counts of sodomy. In light of the differentiation in the instructions, Banks was not denied a unanimous verdict in relation to these sodomy convictions. There was no error in the sodomy instructions relating to T.B.

Similarly, an examination of the sodomy instructions referring to C.B. discloses a comprehensive distinction among the instructions with the exception of Instruction 8 and Instruction 10. These two instructions are identical, and thus fall within the prohibition as explained in *Miller*. As such, we are constrained to reverse the convictions relating to those two instructions. Upon retrial, if any, instructions upon these two counts should be differentiated. There was no error in the remaining sodomy instructions, and those convictions are affirmed.

### III. BANKS WAS NOT ENTITLED TO A DIRECTED VERDICT ON THE INCEST CHARGES

██ Banks next contends that he was entitled to a directed verdict on the three counts of incest against C.B. contained in Instructions 20–22 (Counts 16–18 of the indictment). He argues that the instructions define the conduct supporting the charges as Banks having had "deviate sexual intercourse" with C.B., whereas C.B. testified to instances of vaginal sexual intercourse with her.

Banks argues that C.B. differentiated between her vagina, calling it "between her legs" and her anus, calling it "below her back," and described that Banks "put his private" "between her legs," thus describing sexual intercourse, not "deviate sexual intercourse." He further argues that C.B. testified that Banks "raped" her, which in its normal sense describes vaginal intercourse.

At trial, the Commonwealth represented that incest Instruction 20/Count 16 referred to sodomy Instruction 4/Count 8; that incest Instruction 21/Count 17 referred to sodomy Instruction 10/Count 6; and that incest Instruction 22/Count 18 referred to sodomy Instruction 14/Count 10. Each of these instructions refers to deviate sexual intercourse.

As previously set forth, we review Banks's argument claiming entitlement to a directed verdict on the three incest counts pursuant to the standard contained in *Benham*.

Banks' argument is unpersuasive because it focuses solely on C.B.'s testimony. However, Banks confessed to six instances of sodomy against C.B., including instances of oral sodomy as described in Instructions 20–22. Upon accepting Banks's confession as true and drawing all consequent inferences in favor of the Commonwealth, we are persuaded that the evidence was sufficient to present the charges to the jury.

Guilty verdicts were returned under Instructions 4, 10, and 14, the sodomy charges underlying the incest Instructions. However, as previously discussed, Instruction 10 was identical and redundant with Instruction 8, thus requiring that the sodomy conviction under Instruction 10 be vacated pursuant to *Miller*, 283 S.W.3d

690. Because the underpinning of incest Instruction 21 was the conduct relating to Instruction 10, we are constrained to similarly vacate the incest conviction associated with Instruction 21. In the event of retrial, upon the presentation of appropriate proof, the incest charge relating to Instruction 21, may again be submitted to a jury. *Id.*

## IV. THE JURY WAS PROPERLY INSTRUCTED ON THE SEXUAL ABUSE CHARGES

█ Banks's final argument is that the jury was improperly instructed on the four sexual abuse convictions[4] because the conduct supporting these charges was merely a continuing course of the conduct supporting the sodomy and incest charges. He argues the preliminary rubbing and touching supporting the sexual abuse charges was part of a single continuous act culminating in the acts of sodomy, and, accordingly, those acts merged with the sodomy and did not constitute a separate crime.

In *Bills v. Commonwealth*, 851 S.W.2d 466 (Ky.1993), the defendant was charged with, among other things, sodomy and first-degree sexual abuse. The defendant forced the victim to drive to a remote area where he removed her clothing and forced her to perform oral sex on him. We held that the acts of removing the clothing and the forced sodomy did not merge, stating, "The act of touching while removing the clothing was totally unnecessary and independent of the act of oral sodomy." *Id.* at 471–472. Similarly, the acts of touching and rubbing preliminary to the sodomy in this case were totally unrelated to the actual sodomy. The abusive acts of touching and rubbing did not merge into the

---

4. One count of first-degree sexual abuse against each child was dismissed by the Com-

monwealth prior to submission to the jury.

acts of sodomy, and Banks was properly convicted of the first-degree sexual abuse charges. *Id.*

Banks' reliance on *Stark v. Commonwealth*, 828 S.W.2d 603 (Ky.1991), (overruled on other grounds by *Thomas v. Commonwealth*, 931 S.W.2d 446 (Ky. 1996)), is misplaced. In *Stark* we held that two robbery charges would not lie when business funds and an individual's property were taken during a single robbery incident on the basis that "[t]his is simply a continuing course of conduct and a single criminal impulse." We stated:

> Herein we have but a single act constituting a single offense and violation of only one statute (KRS 515.020). When the impulse is single, only one indictment lies. The present interpretation of Section 13 of the Kentucky Constitution which prohibits an accused from being placed in double jeopardy for the same offense, prohibits the Commonwealth from carving out of one act or transaction two or more offenses. *Ingram v. Commonwealth*, Ky., 801 S.W.2d 321 (1990). The prohibition extends to indicting appellant both for robbery in the first degree of Mr. Muth, individually, and indicting appellant for the robbery of Mr. Muth in his counterpart status as Sav–a–Step Food Mart.

*Id.* at 607.

In *Stark*, by any standard there was but a single act by the defendant, during which two forms of property (personal and business) were stolen. In contrast, as noted above, in the present case two unrelated acts occurred: the acts of rubbing and touching, which comprise the first-degree sexual abuse convictions, and the separate and unrelated acts of sodomy, which comprise the first-degree sodomy convictions. As such, *Stark* is not applicable to the present facts.

## V. CONCLUSION

For the foregoing reasons the judgment of the Hardin Circuit Court is affirmed in part, reversed in part, and remanded for additional proceedings consistent with this opinion.

MINTON, C.J., ABRAMSON, NOBLE, and SCHRODER, JJ., concur.

SCOTT, J., concurs in part and dissents in part by separate opinion, in which CUNNINGHAM, J., joins.

CUNNINGHAM, J., concurs in part and dissents in part by separate opinion.

SCOTT, J., concurring in part and dissenting in part:

Although I concur with the majority on the other issues, I must dissent as the instructional error here was absolutely harmless. I say this because Appellant *admitted* to twelve counts of sodomy with the children, was tried on ten of them (the other two having been dismissed during trial) and was convicted of nine of them. If he admitted to twelve, but was only convicted of nine, how could a "unanimity error" ever be harmful? In my opinion, it could not. Thus, I dissent on this issue and would affirm the conviction.

CUNNINGHAM, J., joins.

CUNNINGHAM, J., concurring in part and dissenting in part:

Justice Venters does an excellent job of sorting out a confusing array of numerous counts and instructions. I concur for the most part, but dissent as to the Court's reversal on instructions 8 and 10. These instructions were identical, but there was sufficient evidence to convict on both. And since the jury convicted on both, I see no unanimity problem as to these two instructions. Although they were overlapping, as opposed to identical, I would

apply the same logic to instructions 6 and 7. Again, there was sufficient and differential evidence on both, and the jury convicted on both. This is consistent with my dissent in *Miller v. Commonwealth*, 283 S.W.3d 690 (Ky.2009). I concur in every other aspect of the opinion and also commend the trial court's work in dealing with a complex set of instructions.