# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: FEBRUARY 16, 2023
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0354-MR

CLIFFORD HOWELL                                                          APPELLANT

V.
ON APPEAL FROM KENTON CIRCUIT COURT
HONORABLE KATHLEEN LAPE, JUDGE
NO. 18-CR-01236

COMMONWEALTH OF KENTUCKY                                        APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Clifford Howell was convicted by the Kenton Circuit Court of six counts of first-degree sexual abuse and for being a persistent felony offender. Howell was sentenced to twenty years in prison consistent with the jury's recommendation and he now appeals as a matter of right. After review, we affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

In 2018, sisters Michelle and Mandy[1] disclosed that they were sexually abused by their maternal grandfather, Clifford Howell, who lived with them for a period of time. The acts took place between 2011 and 2018 when both girls

---

[1] In his brief, Appellant Howell refers to the victims as MiS and MaS because the victims are sisters and have the same first and last initials. The Commonwealth refers to the victims using the pseudonyms Michelle and Mandy. To protect their identities and for ease of reference, we refer to the victims as Michelle and Mandy.

were under the age of 16. Michelle and Mandy discovered that they both had been a victim of Howell's inappropriate sexual behavior and told their mother, who confronted Howell and kicked him out of the house. The Covington Police Department investigated, and Michelle and Mandy were interviewed by the Children's Advocacy Center.

Michelle lived with her parents and four siblings, including Mandy, in a mobile home in Elsmere, Kentucky between 2011 and 2013. Howell did not live with them, but occasionally visited. Michelle testified that uncomfortable and inappropriate things happened between her and Howell "quite a few times" at the trailer. She described an incident when Howell came into her bedroom, took off her pants, and rubbed his penis on her vagina. She believed that she was 11 or 12 at the time. She recalled another occasion when she was alone with Howell in the kitchen, and he pulled her pants down and rubbed his penis on her butt. She remembered the incident because it occurred while the family was having a cookout and believed it happened while she was a teenager.

Michelle explained that she did not disclose the incidents to anyone for a while because she was scared and feared that no one would listen to her. A few years later, she discovered that Mandy had similar experiences with Howell which prompted both to come forward.

Mandy, who is two years younger than Michelle, testified about incidents from 2013 to 2018 involving Howell when Mandy, her parents, and four siblings, including Michelle, lived in a house in Covington, Kentucky. She stated that when she was 13 or 14 years old, she was in Howell's bedroom

2

when he made her pull down her pants and show him her "crotch."  During this incident Howell masturbated and also touched his penis to her leg.  Mandy testified about a separate time when Howell touched her chest over the top of her clothes in the kitchen.

Police organized a controlled call between Michelle and Howell.  Portions of the call were played for the jury during the trial.  During the call, Michelle told Howell that before she would agree to him moving back in with the family, she needed to understand what happened and why he had done what he had done.  Throughout the call, Howell apologized, said he did not know why it happened, and said it would never happen again.  He promised to never do "sex things" again to Michelle or Mandy.  Although Michelle pressed, Howell never apologized for anything more than "bad things" and "sex things."  Howell stated, "nothing will ever happen to nobody in that house ever, never, ever again," and "it stops now."  Later that day, police brought Howell to the police station where he sat for a recorded interview.  At first, Howell claimed not to know anything about the allegations.  He eventually admitted to masturbating in front of Mandy and touching Michelle's vagina with his hand.

After a two-day jury trial, Howell was convicted of six counts of first-degree sexual abuse and of being a persistent felony offender (PFO) in the first degree.  The trial court sentenced Howell to 20 years in prison in accordance with the jury's recommendation.  On appeal, Howell argues that (1) the trial court erred by denying his motion for directed verdict; (2) counts in the indictment and corresponding jury instructions violated double jeopardy; and

3

(3) the presentence investigation (PSI) report contained inflammatory and prejudicial information.  We address each argument in turn.

## ANALYSIS

### I. The trial court properly denied Howell's motion for directed verdict.

At the close of the Commonwealth's case, Howell moved for directed verdict as to Count 3, one count of first-degree sexual abuse.  The Commonwealth charged Howell with this count of sexual abuse based on Michelle's allegation that Howell touched her vagina with his hand or finger.  Defense counsel argued that Michelle did not testify to any incident where Howell touched her vagina with his hand or finger, and that the sole evidence that supported Count 3 was Howell's uncorroborated confession during the police interview.  The trial court deferred its decision until the next morning and ultimately overruled the motion.  The trial court reasoned that Michelle stated there was more than one incident with Howell and referenced Howell's admissions during the controlled call.  The trial court also reiterated the jury's role as fact-finder.

Under Kentucky Rule of Criminal Procedure (RCr) 9.60, "[a] confession of a defendant, unless made in open court, will not warrant a conviction unless accompanied by other proof that such an offense was committed."  "Although proof beyond a reasonable doubt is necessary to convict of a criminal offense, the proof required by RCr 9.60 to corroborate an extrajudicial confession need not be such that, independent of the confession, would establish the corpus delicti or Appellant's guilt beyond a reasonable doubt[.]"  *Blades v.*

4

*Commonwealth,* 957 S.W.2d 246, 250 (Ky. 1997). Therefore, proof of the corpus delicti, i.e., that Howell committed the offense of first-degree sexual abuse, may be established by considering his confession alongside other evidence presented at trial.

When presented with a motion for directed verdict,

> the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

*Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky. 1991). "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Id.* On appeal, Howell argues that the trial court erred in failing to grant a directed verdict on the sexual abuse charge because Howell's uncorroborated confession was insufficient to sustain a conviction.

At trial, Michelle explained that she lived with her family in a mobile home/trailer in Elsmere before moving to the house in Covington. Howell lived with the family in the Covington house but only "sometimes" visited them when they lived in the mobile home. She provided the following testimony:

> Commonwealth: Was there ever a time when something happened with your grandpa, Clifford Howell, that was uncomfortable or inappropriate, or something that happened to you?
>
> Michelle: Um, **quite a few times at the trailer** and . . .

5

Commonwealth: Okay, and you talked about [the Covington house][2] and [trailer], so you're saying the trailer. Which one of those were they?

Michelle: Um, it's the [trailer].

Commonwealth: Okay, and you said it happened a couple of times, or more than one time?

Michelle: **It happened a couple of times**.

Commonwealth: Okay. **I want you to think about one of those times** and I'm going to ask you some questions about it.

(Emphasis added). Michelle then testified about the incident in her bedroom at the trailer when Howell took off her pants and rubbed his penis on her vagina. She then described a separate incident that occurred in the kitchen when Howell pulled her pants down and rubbed his penis on her butt. Michelle never directly stated that Howell touched her vagina with his hand. However, Michelle did provide corroborating information by confirming that he did inappropriate things "quite a few times," which means more often than her specific allegations and "at the trailer," which provides supporting evidence of location.

In *Banks v. Commonwealth,* 313 S.W.3d 567, 569 (Ky. 2010), defendant Banks admitted to committing sexual acts upon his two minor daughters for a three-year period. Banks estimated this occurred about six times with each daughter and he was ultimately indicted on twelve counts of first-degree sodomy, among other charges. *Id.* After the Commonwealth dismissed two of

---

[2] We omit the specific addresses of the residences for anonymity.

the sodomy charges, the jury returned guilty verdicts on nine of the ten remaining counts of sodomy. *Id.* at 569-70.

On appeal, Banks argued that the Commonwealth presented insufficient evidence to convict him of nine counts of sodomy. *Id.* at 570. According to the Court's summary of the evidence, T.B., Banks's daughter and victim, testified at trial and described incidents with her father but only explicitly recounted sodomy on two occasions. *Id* at 570-71. C.B., Banks's other daughter and victim, testified that she witnessed "something happen" between T.B. and her father. *Id.* She also stated that things happened between her and her father but could not remember how many times. *Id.* C.B. testified about two types of sodomy she recalled but could not remember how many times those things happened. *Id.*

The Court held that the evidence was sufficient to submit the case to the jury:

> Pursuant to *Benham,* we assume Banks's confession to be true; that is that he committed acts of sodomy against each of his daughters as admitted in his statement to police. Banks confessed that he did this on about six occasions against each daughter, and from this we draw the inference that he did, in fact, commit a total of twelve acts of sodomy against his children during the three year period from March 2002 to March 2005. **C.B. and T.B. corroborated Banks's confession with their testimony of multiple instances of abuse.** Upon drawing all inferences from the evidence in favor of the Commonwealth, we cannot conclude that it was unreasonable for the jury to have found the defendant guilty of nine counts of sodomy.

*Id.* (emphasis added).

7

Like in *Banks,* Michelle testified that uncomfortable and inappropriate things happened between her and Howell "quite a few times" when she lived in the trailer. Although her testimony did not describe each individual instance of the sex crimes committed against her, she indicated that there was more than one instance. In addition to Howell's statement to police about touching Michelle with his hand, the Commonwealth also presented portions of the controlled call with Michelle, during which Howell admitted to "sex things" while apologizing for what he did. Mandy also testified about the inappropriate encounters she had with Howell. The victims' testimony, taken as a whole, established Howell's opportunity to commit the crimes, i.e., being at the trailer on multiple occasions and living with the family in the Covington house, and a pattern of behavior.

We recognize that the evidence presented by the Commonwealth was not conclusive. But the corroborative evidence required by RCr 9.60 does not have to rise to the level of proof beyond a reasonable doubt. *Lofthouse v. Commonwealth,* 13 S.W.3d 236, 242 (Ky. 2000) (citing *Blades,* 957 S.W.2d at 250). "[E]ven if the circumstantial evidence in this case standing alone would not suffice to prove guilt beyond a reasonable doubt, it sufficed to corroborate Appellant's confession; and the circumstantial evidence and the confession considered together constituted sufficient proof to take the case to the jury." *Blades,* 957 S.W.3d at 250. The Commonwealth presented sufficient evidence at trial to allow a reasonable juror to find guilt, particularly in light of the trial court's duty to draw all fair and reasonable inferences in favor of the

8

Commonwealth and assume that the evidence is true. *Benham,* 816 S.W.2d at 187. Any questions as to the credibility and weight given to the testimony are reserved for the jury. *Id.* Upon drawing all inferences from the evidence in favor of the Commonwealth, we cannot conclude that it was unreasonable for the jury to have found Howell guilty of sexual abuse as described in Count 3.

**II.    The jury instructions did not violate double jeopardy.**

Mandy testified about an incident when she lived in the Covington house with her parents, siblings, and Howell. She and her siblings shared a bedroom upstairs, Howell also had a bedroom upstairs, and her parents slept downstairs. While Mandy was in Howell's room he directed her to remove her pants, masturbated in front of her, and ejaculated on her leg. The Commonwealth asked her about another incident that occurred in the kitchen, then returned to the bedroom incident. Mandy testified that during that incident, Howell touched his penis to her leg.

Based on these acts, Howell was charged with two counts of first-degree sexual abuse—one count for masturbating in front of Mandy and one count for Howell touching his penis to her leg. At the close of the Commonwealth's case-in-chief, Howell argued that the act touching his penis to Mandy's leg was incidental to the masturbation and therefore the acts merged. Since there were not two separate acts, the two charges violated double jeopardy. The Commonwealth contended that the act of masturbation was separate and distinct from the act of touching with a penis. The trial court overruled the motion for directed verdict and determined that Howell touching his penis to

9

Mandy's leg was not incidental to masturbation and did not violate double jeopardy.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 13 of the Kentucky Constitution preclude multiple convictions for the same offense. To determine whether a double jeopardy violation has occurred, Kentucky courts use the test outlined in *Blockburger v. United States,* 284 U.S. 299, 304 (1932), to determine whether each charge requires proof of a fact that the other does not.[3] We review Howell's acts under the framework of the sexual abuse statute to determine whether the convictions violate double jeopardy.

KRS 510.110 defines first-degree sexual abuse as follows:

(1) A person is guilty of sexual abuse in the first degree when:
. . . .
    (c) Being twenty-one (21) years old or more, he or she:
        1. Subjects another person who is less than sixteen (16) years old to sexual contact;
        2. Engages in masturbation in the presence of another person who is less than sixteen (16) years old and knows or has reason to know the other person is present; . . . .

---

[3] KRS 505.020-060 contains Kentucky's statutory codification of the *Blockburger* test and provides that "[w]hen a single course of conduct of a defendant may establish the commission of more than one (1) offense, he may be prosecuted for each such offense." KRS 505.020(1). However, the defendant cannot be convicted of both offenses if "the offense is designed to prohibit a continuing course of conduct and the defendant's course of conduct was uninterrupted by legal process, unless the law expressly provides that specific periods of such conduct constitute separate offenses." KRS 505.020(1)(c).

Sexual contact is defined as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying the sexual desire of either party." KRS 510.010(7).

Each jury instruction at issue defined different conduct. Count 5, described in Instruction 12, implicated KRS 510.010(1)(c)(1) and stated:

> You will find the Defendant, Clifford E. Howell, guilty of Sexual Abuse in the First Degree under this Instruction and under Count 5 of the Indictment if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That in this County on or between February 18, 2013 and January 31, 2018, and before the finding of the Indictment herein, Clifford E. Howell subjected [Mandy] to sexual contact when he rubbed his penis on her leg, in the Defendant's bedroom at [the Covington house];
> AND
> B. That at the time of such occurrence, the Defendant was 21 years of age or older and [Mandy] was less than 16 years of age.

Count 7, described in Instruction 14, implicated KRS 510.010(1)(c)(2) and stated:

> You will find the Defendant, Clifford E. Howell, guilty of Sexual Abuse in the First Degree under this Instruction and under Count 7 of the Indictment if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That in this County on or between February 18, 2013 and January 31, 2018, and before the finding of the Indictment herein, Clifford E. Howell masturbated in the presence of [Mandy] and he knew or had reason to know she was present;
> AND
> B. That at the time of such occurrence, the Defendant was 21 years of age or older and [Mandy] was less than 16 years of age.

11

Howell relies on portions of Mandy's testimony about the masturbation incident. After Mandy described the incident, the Commonwealth asked whether anything else happened to which Mandy responded "no." The Commonwealth asked if there was a time when Howell's penis touched any part of her body and Mandy responded that his penis touched her leg. The Commonwealth questioned whether that happened at the same time as the masturbation, and she confirmed that it did. The Commonwealth asked what Howell did when his penis touched her leg and she explained that Howell was moving it up and down. Based on this testimony, Howell concludes that touching his penis to Mandy's leg was incidental and that the masturbation and sexual contact coincided, constituting a single act of sexual gratification.

In support of his argument, Howell cites *Bills v. Commonwealth,* 851 S.W.2d 466 (Ky. 1993).[4] In *Bills,* the Court described "sexual contact" and stated that the touching "must be done for the purpose of sexual gratification."

---

[4] We note that Howell also cites *Hamilton v. Commonwealth,* 659 S.W.2d 201 (Ky. 1983) in support of his argument. The *Hamilton* Court determined that the defendant's convictions for rape and incest resulting from a single act of sexual intercourse with his daughter violated double jeopardy because the proof used to convict the defendant of rape was the same evidence used to support the incest conviction. 659 S.W.2d at 202. The Court reasoned that:

> When we view the present case, we find that the proof utilized to convict the appellant of rape was that he had sexual intercourse with a ten-year-old child, who was, in actuality, his daughter. The only additional fact—the relationship of father/daughter—was required in the incest charge. Thus, in a sense, the additional fact was not present in "each" case, as required by *Blockburger,* but in only one case.

While this case appears instructive, *Hamilton* was overruled by *Commonwealth v. Burge,* 947 S.W.2d 805, 811 (Ky. 1996). The Court noted that *Hamilton* was "decided contrary to *Blockburger* and KRS 505.020." *Id.*

*Id.* at 471. The Court ultimately held that an act constituting sexual abuse for touching the victim's intimate parts while removing her clothing did not merge into an ensuing act of sodomy: "[t]he removal of the victim's clothing was unnecessary in regard to the sex act involving oral sodomy. The two acts did not merge even though they may have occurred close in time." *Id.* at 472. Even though the sexual contact and masturbation occurred during the same encounter with Mandy, during the same course of sexual misconduct, they are separate and distinct acts, as plainly outlined in KRS 510.110.

Under KRS 510.110, a defendant can be guilty of first-degree sexual abuse for subjecting another person to "sexual contact," i.e., touching the sexual/intimate parts of a person for the purpose of sexual gratification, or for engaging in masturbation in the presence of another person who is less than sixteen years old. Each subsection defines different conduct. Howell could have been found guilty of committing first-degree sexual abuse in two different ways: (1) subjecting Mandy to sexual contact; or (2) masturbating in her presence. Howell could have violated KRS 510.110(1)(c)(1) by only touching Mandy's leg. He also could have violated KRS 510.110(1)(c)(2) by engaging in masturbation in her presence. Simply put, first-degree sexual abuse under KRS 510.110(1)(c)(1) and (2) each require elements that the other does not. In enacting this statute and creating separate subsections, the legislature expressed its intent to deter and punish two types of acts. Mandy's testimony provided sufficient evidence for the two distinguishable types of first-degree sexual abuse, and the instructions sufficiently distinguished one instance of

13

sexual abuse (masturbation) from a different instance of sexual abuse (the touching of Mandy's leg with the penis). Therefore, no constitutional or statutory double jeopardy violations occurred.

### III. No error resulted from the inclusion of all information in the presentence investigation report.

Howell challenges the trial court's use of the presentence investigation (PSI) report and its contents. On October 7, 2020, the trial court scheduled Howell's sentencing hearing for December 8, 2020. At the sentencing hearing, defense counsel objected to the inclusion of allegations relating to a third grandchild that Howell was never criminally charged with, and Mandy and Michelle's allegations which were either expressly controverted by trial testimony or for which the jury returned a not guilty verdict or convicted Howell of a lesser included charge. The trial court continued the sentencing hearing and allowed the parties until February 18, 2021 to submit written argument on the issue. At a February 22, 2021 hearing, the trial court again continued the sentencing hearing because a final jury trial order setting out the convictions had not been entered for consideration in generating the PSI report.

At Howell's final sentencing hearing on April 26, 2021, the trial court overruled Howell's motion to further amend the PSI report, noting Howell's multiple opportunities to controvert the PSI report through written and oral argument. The trial court noted the broad discretion that Probation & Parole has in what information they consider when generating the PSI report and the trial court sentenced Howell to 20 years in prison in accordance with the jury's

recommendation.  On appeal, Howell argues that he was denied a fair opportunity to controvert the factual inconsistencies and amend the PSI report.

KRS 532.050 requires a court to order a PSI prior to imposing a sentence for conviction of a felony.  It also requires a court to order a Sex Offender Evaluation report prior to imposing a sentence on a defendant convicted of a sex crime, as defined by KRS 17.500.  Both reports shall be used by the court in determining the appropriate sentence, and the court is required to review the contents of the PSI with the defendant at sentencing.  KRS 532.050(6).  If the defendant disputes any information contained in the PSI report, the court can hear evidence and make appropriate findings.  *Id.*  If requested by the defendant, the court must also afford a "fair opportunity and a reasonable period of time" for the defendant to controvert the factual contents and conclusions contained in the PSI report.  *Id.*

Here, a PSI report was prepared by a probation officer and reviewed by the trial court prior to sentencing.  The trial court further ordered and reviewed a sex offender evaluation.  The PSI report is not only reviewed and considered by a trial court prior to sentencing as required by KRS 532.050, but also follows a criminal defendant for use by the Parole Board in determination of parole eligibility.  The Parole Board must obtain and consider all "pertinent information" regarding each prisoner, which includes "the results of his or her most recent risk and needs assessment, his or her criminal record, his or her conduct, employment, and the reports of physical and mental examinations

15

that have been made." KRS 439.340(1) and (2). Given this requirement, the parole board has discretion to consider various types of evidence.[5]

Howell was provided a copy of the PSI report and ample opportunity to controvert the information it contained and argue that it improperly included information and contained inaccuracies—twice during hearings and once through written argument. The trial court considered his arguments on multiple occasions. Further, Howell did not challenge the accuracy of any of the allegations by his third grandchild but instead objected to inclusion of that information. We also emphasize that the trial court sentenced Howell in accordance with the jury's recommended sentence. Howell was afforded his statutory rights as prescribed by KRS 532.050 and the trial court did not err in denying his request to further amend the report.

## CONCLUSION

For the foregoing reasons, we affirm the judgment and sentence of the Kenton Circuit Court.

All sitting. All concur.

---

[5] In *Aaron v. Commonwealth*, 810 S.W.2d 60, 62 (Ky. App. 1991), the Court of Appeals explained that, generally, a Parole Board has "broad discretion in hearing evidence, including dismissed counts of an indictment, hearsay evidence, and allegations of criminal activity for which the prisoner has not even been charged." (citing *Hackett v. U.S. Parole Comm'n,* 851 F.2d 127, 131 (6th Cir., 1987) and *Maddox v. Parole Comm'n,* 821 F.2d 997, 999 (5th Cir., 1987)). The federal cases cited by the Court of Appeals involved the United States Parole Commission.

16

COUNSEL FOR APPELLANT:

Shannon Dupree
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Mark D. Barry
Assistant Attorney General