COMMONWEALTH of Kentucky, Appellant

v.

Joe TAYLOR, Appellee

2014–SC–000211–DG

Supreme Court of Kentucky.

RENDERED: DECEMBER 17, 2015

COUNSEL FOR APPELLANT: Jack Conway, Attorney General, Courtney J. Hightower, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, 1024 Capital Center Drive, Frankfort, Kentucky 40601

COUNSEL FOR APPELLEE: Kathleen Kallaher Schmidt, Assistant Public Advocate, Department of Public Advocacy, 200 Fair Oaks Lane, Suite 500, Frankfort, Kentucky 40601

## OPINION OF THE COURT
## BY JUSTICE NOBLE

Under *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), and *Shull v. Commonwealth*, 475 S.W.2d 469 (Ky.1971), a criminal defendant's testimony at a suppression hearing may not be used as evidence of guilt at trial without violating his Fifth Amendment privilege against self-incrimination if he objects to its use. In this case, the defendant did not object, and the testimony was used against him. The Court of Appeals nevertheless concluded that a palpable error had occurred and reversed the conviction. Is the requirement of an objection a substantive aspect of the constitutional rule that bars palpable-error review? This Court concludes that it is, and thus reverses the Court of Appeals and remands this case for further consideration.

## I. Background

In May 2010, Joe Taylor was living with some relatives, including his aunt,[1] Diane Taylor.[2] On May 14, 2010, police went to the residence to arrest him on a felony indictment. Joe was sitting on the front porch, allegedly smoking marijuana. Diane Taylor was on parole for a felony conviction, and her parole officer accompanied the police. The parole officer entered the home and saw that alcohol was present, which was a violation of Diane's conditions of parole. The parole officer obtained consent from Diane to search the residence, which was carried out with help from the police.

The search of the residence extended to what turned out to be Joe's bedroom. There, police assisting the parole officer found cocaine, cash, a handgun, and Joe's wallet and identification. Joe was charged with first-degree trafficking in a controlled substance, cocaine, and possession of a firearm by a convicted felon.

Joe moved to suppress the evidence, claiming that Diane could not consent to a search of his bedroom because it was under his exclusive control or, alternatively, that whether the room was under his control was ambiguous enough that police should have inquired further before searching it. An evidentiary hearing was held at which the parole officer and multiple police officers testified that Diane had consented to the search and that she had said Joe did not pay rent to stay in the home. They also described their search of the communal areas of the house, and all three bedrooms, and finding the gun and drugs. Diane also testified about whether she signed the consent to search. Joe did not testify at this hearing.

The trial court denied the suppression motion. The court concluded that the officers had authority to search the premises because Diane was on parole, and Joe had no expectation of privacy because the door to his bedroom was not locked and there was nothing to indicate that the room was exclusively his.

Joe was then tried on the handgun charge (the trafficking charge was to be tried later). He was convicted and sentenced to seven and a half years in prison.

After this trial, he filed a second suppression motion, seeking to offer supplemental evidence. The trial court held another evidentiary hearing at which Joe himself testified that the bedroom door had a lock to which he had the only key. He claimed that he may not have locked the door that day but that no one else could use the bedroom because it was his space. He also testified that he had been unaware that the bedroom search was happening; otherwise, he would have objected to it. But he also, according to the trial court, testified "that no one had a greater right in the house than anyone else."

Despite this testimony, the court again denied his motion. In explaining its reasoning, the court stated:

[Joe's] expectation [as] to unwarranted searches was not that great due to the fact the he left the door to the bedroom unlocked, .... Diane Taylor ... was on parole (which [Joe] knew), and the fact that no one person had greater rights than the others to control the home, as

---

1. Joe Taylor's brief to the Court of Appeals states that she is his aunt, which conforms to her testimony at a suppression hearing. His brief to this Court, however, states that she is his sister. The exact relationship does not affect this appeal.

2. At a suppression hearing, Diane testified that her name was Diane Turner, and later Diane Taylor Turner. We will refer to her as Diane Taylor in conformity with the Court of Appeals' usage.

Diane Taylor gave consent to search the residence.

Joe was then tried on the trafficking charge. His defense theory was that the cocaine was Diane's and that she had hidden it in his room. The Commonwealth's evidence, therefore, focused in part on who had access to the bedroom. The Commonwealth elicited testimony from a police officer about Joe's testimony at the second suppression hearing, including that Joe had said the bedroom was his and that no one else was supposed to go into the bedroom. Joe did not object to this testimony. He elected not to testify in his own defense.

Joe was also convicted on this charge. He was sentenced to six years' imprisonment, which was to run consecutively to the sentence on the firearm conviction, for a total of 13½ years in prison.

He appealed his convictions, and the Court of Appeals consolidated the cases. He raised several issues on appeal, including that the trial court erred in denying his suppression motions and that the trial court had erred in allowing the officer to testify about Joe's suppression-hearing testimony in the trafficking trial.

The Court of Appeals held that the trial court properly denied the suppression motions and found no error as to a claim related only to the handgun conviction. The panel divided over the trafficking conviction, with the majority reversing it. The majority held that the use of Joe's suppression-hearing testimony violated his right not to incriminate himself under *Shull v. Commonwealth*, 475 S.W.2d 469 (Ky.1971), and that the error, though unpreserved, was palpable. The majority did not engage in substantial analysis on this latter point, simply concluding: "It is clear from the testimony that the Commonwealth used the statements Taylor made at the first suppression hearing against him in violation of that right [not to testify]. Such was palpable error and we reverse this action for a new trial as a result of the error." (The Court of Appeals erroneously referred to the first suppression hearing, but Joe did not testify at it.) Because it was reversing the trafficking conviction on this ground, the majority did not reach other claims of error related to it, describing them as moot.[3] The dissent agreed that the Commonwealth erred in using the suppression-hearing statements but concluded that the error was harmless and therefore not palpable.

The Commonwealth sought discretionary review, which this Court granted. Joe Taylor did not successfully cross-appeal any of the Court of Appeals' rulings adverse to him, including its upholding of the trial court's denial of the suppression motion.[4] Thus, the sole issue before this Court concerns the use of the suppression-hearing statements at the trafficking trial.

## II. Analysis

There is no question that the use at trial of a criminal defendant's suppression-hearing testimony as evidence of guilt can violate his or her constitutional rights. The only question here is whether it does so in all cases.

---

3. Though the Court of Appeals' opinion is titled as one "reversing and remanding," and it concluded by stating that the "action" was reversed, the opinion necessarily affirmed the handgun conviction. The court found no error as to the two issues related to that trial and conviction.

4. Joe filed a cross-motion for discretionary review outside the ten-day window allowed by Civil Rule 76.12(1). He also asked for an enlargement of time, but that motion was denied.

In 1968, the U.S. Supreme Court addressed the dilemma faced by defendants who had to either choose to make admissions at a suppression hearing to establish their standing to challenge seized evidence, or to maintain their silence and thereby preserve their right not to incriminate themselves at trial. *Simmons v. United States*, 390 U.S. 377, 392–93, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). The Court described the dilemma succinctly as follows: "[A] defendant who wishes to establish standing must do so at the risk that the words which he utters may later be used to incriminate him." *Id.* at 393, 88 S.Ct. 967. In essence, a defendant was required to choose between making a Fourth Amendment claim and exercising the Fifth Amendment privilege against self-incrimination, which created "an undeniable tension." *Id.* at 394, 88 S.Ct. 967. The Court found "it intolerable that one constitutional right should have to be surrendered in order to assert another." *Id.* As a result, the Court held that "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." *Id.*

This Court's predecessor, the old Court of Appeals, applied this rule, describing it in slightly different fashion: "when a defendant testifies in support of a motion to suppress, his testimony may not thereafter be admitted against him at the trial on the issue of guilt unless he fails to object." *Shull v. Commonwealth*, 475 S.W.2d 469, 472 (Ky.1971).

The Commonwealth points to language in both opinions suggesting that the rule applies only where a defendant does not object to the use at trial of his suppression-hearing testimony. Absent an objection, the Commonwealth reasons, the testimony may be used against the defendant at trial. This means that the objection requirement is part of the substantive law. From this it follows that there is no error in the use of the suppression-hearing testimony when the defendant does not object, and thus there can be no palpable error.

Joe Taylor, on the other hand, claims that the core rule of both *Simmons* and *Shull* is that suppression-hearing testimony cannot be used as evidence of guilt in the Commonwealth's case-in-chief at all and that the lack of an objection simply means the error is unpreserved. For Joe Taylor, the objection requirement is procedural only.

■ The Commonwealth's position is correct. The constitutional rule as laid out in *Simmons*, and subsequently in *Shull*, specifically incorporates an objection requirement. It is thus part of the substantive law, and not a mere procedural requirement for preserving errors for appellate review. The failure to object to the trial use of such testimony results in no error. It is, in fact, a waiver.

*Simmons* creates a mechanism only to resolve the constitutional tension that would result in forcing a defendant to choose between constitutional rights. The mechanism essentially allows a defendant to make a Fourth Amendment claim which might require inculpatory testimony and then to assert the Fifth Amendment privilege against self-incrimination *after the fact.*

■ The Fifth Amendment privilege is not self-executing. As this Court has noted, "the protections of the privilege with respect to incriminating statements are not automatic." *Bartley v. Commonwealth*, 445 S.W.3d 1, 5 (Ky.2014). Instead, the privilege ordinarily requires assertion by the defendant. Thus, in the context of police interrogations, "[a]n accused who 'desires the protection of the privilege ... must claim it,' and must do so unambiguously." *Id.* (quoting *United*

*States v. Monia,* 317 U.S. 424, 427, 63 S.Ct. 409, 87 L.Ed. 376 (1943); citing *Berghuis v. Thompkins,* 560 U.S. 370, 381, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010)). But even outside that context, invocation of the right is necessary because the Fifth Amendment "speaks of compulsion" and "does not preclude a witness from testifying voluntarily in matters which may incriminate him." *Monia,* 317 U.S. at 427, 63 S.Ct. 409. Thus, if a defendant "desires the protection of the privilege, he must claim it or he will not be considered to have been 'compelled' within the meaning of the Amendment." *Id.*

When a defendant testifies at a suppression hearing, he does so voluntarily, at least "[a]s an abstract matter." *Simmons,* 390 U.S. at 393, 88 S.Ct. 967. "A defendant is 'compelled' to testify in support of a motion to suppress only in the sense that if he refrains from testifying he will have to forego a benefit, and testimony is not always involuntary as a matter of law simply because it is given to obtain a benefit." *Id.* at 393–94, 88 S.Ct. 967. The Supreme Court crafted the *Simmons* rule only to resolve the tension created by that voluntary choice which would otherwise require a trade-off of one constitutional right for another. But that does not mean that a defendant has asserted his Fifth Amendment rights at that point. And there is no real question that he has been compelled to testify at the suppression hearing in the sense contemplated by the Fifth Amendment.

■ It simply makes sense to require the defendant to assert his Fifth Amendment right at some point. This is why the rule in *Simmons* (and *Shull*) is qualified by language requiring an objection. That requirement is part of the substantive constitutional rule. Failure to object to the use of the suppression-hearing testimony means that the defendant has not invoked his Fifth Amendment privilege. More importantly, it means that the use of that testimony, absent the objection, is not even error because there is no Fifth Amendment violation absent invocation of the privilege.

■ There can be no palpable-error review when there is no error in the first instance. The Court of Appeals therefore erred in resorting to that review. Joe Taylor's failure to object to the use of his suppression-hearing testimony should have ended the inquiry. Because he failed to object (and thereby failed to invoke his rights), the rule in *Simmons* barring use of his testimony at trial on the question of guilt was not applicable.

That said, we recognize that this understanding of *Simmons* and *Shull* could pose difficulty going forward for trial counsel who fail to object because they are in the heat of trial. The easy solution would be a pretrial motion *in limine* to suppress the use of the defendant's suppression-hearing statements. Such a motion should invariably be granted and, if sufficiently detailed, would constitute an adequate objection and invocation of the defendant's Fifth Amendment privilege. *Lanham v. Commonwealth,* 171 S.W.3d 14, 21 (Ky.2005).

### III. Conclusion

For the foregoing reasons, the judgment of the Court of Appeals reversing Joe Taylor's trafficking conviction is reversed. The issues that the Court of Appeals found to be rendered moot by its decision are now live issues. This case, therefore, is remanded to the Court of Appeals for consideration of those issues.

Minton, C.J.; Abramson, Cunningham, Keller, Noble and Venters, JJ., sitting. All concur. Wright, J., not sitting.