# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: JANUARY 18, 2024
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2022-SC-0487-MR

MICHAEL LEHMAN          APPELLANT

V.
ON APPEAL FROM HARDIN CIRCUIT COURT
HONORABLE KELLY M. EASTON, JUDGE
NO. 21-CR-00271

COMMONWEALTH OF KENTUCKY          APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

A Hardin County jury found Appellant Michael Lehman (Lehman) guilty of first-degree sodomy, victim under twelve years old, and first-degree sexual abuse, victim under twelve years old. Lehman was sentenced to a total of twenty years in prison. On appeal, he claims that the jury instructions violated his right to a unanimous verdict and that the trial court erred when it allowed impermissible expert and veracity testimony from the investigating detective. Upon review, we affirm the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

In the fall of 2020, eleven-year-old J.A. disclosed to Vicky, her paternal grandmother, that Lehman, her step-grandfather, had been touching her inappropriately. J.A.; her father, Steven; and a sibling had moved into Lehman's and Vicky's home after J.A.'s parents separated. A family meeting

was held to confront Lehman with the allegations. Vicky told Lehman to move out and Lehman abided. A few months later, another family member reported the allegations to the police. Detective Jones investigated the allegations. After J.A.'s forensic interview, Lehman was charged with first-degree sexual abuse. About a week later, J.A. made additional allegations, and Lehman was also charged with first-degree sodomy.

J.A., Steven, Vicky, Detective Jones, and Ruthie, Steven's girlfriend, testified at trial. J.A. testified that Lehman touched her with his hands and penis. She testified specifically that he touched her private parts with his hands and put his penis inside her butt. J.A. testified that the touching occurred in the basement, that Lehman touched her a few times a week from the time she was seven until she was eleven, that the last time Lehman touched her private parts was October 30, 2020, and the last time he put his penis in her butt was a couple of weeks before that. She also testified that she told her grandmother about these assaults after J.A.'s half-sister was born; she was worried that Lehman would assault her sister, too.

Steven testified that Lehman admitted that he touched J.A. and that's why Vicky told Lehman to leave. Ruthie testified that J.A. came to her in August 2020 and told her that her butt hurt, but she thought J.A. was constipated and because she had not been dating Steven very long, she did not think it was her place to take J.A. to the doctor. Vicky testified that J.A. did not tell her Lehman was doing anything other than touching J.A.

2

Vicky's interview with Detective Jones was recorded on his body camera and played for the jury. She told Detective Jones about confronting Lehman and that Lehman said it did not go further than touching, said that he was a monster, and said that he wanted to kill himself. At trial, however, Vicky testified that Lehman had not admitted to touching J.A. Vicky testified that she was mad and made her statements up to hurt Lehman because she thought he had hurt J.A., but she no longer believed J.A.[1] Vicky also testified that later she and Lehman began living together in an apartment and he resided with her until the trial.

Detective Jones testified that he spoke to Lehman during his investigation. He testified that Lehman admitted that Vicky confronted him about the allegations and that Vicky told him that he must have been drunk when he touched J.A.

Detective Jones also testified that he has many years of law enforcement experience, which included investigating sex crimes. Detective Jones further testified that he did not have J.A. medically evaluated after J.A. reported being sodomized. He explained that with J.A.'s statement being taken in January and the last alleged incident occurring in October, given his experience working with children that age who "heal pretty quickly," physical evidence of the crime would not be picked up by the exam.

---

[1] The trial court admonished the jury to "disregard the statement of belief then or now."

In regard to his conversation with Vicky in the cruiser, when the Commonwealth asked Detective Jones if he felt the things Vicky said to him at the time were truthful, he answered, "I have no doubt she was telling the truth." He stated that she wasn't making it up because "she didn't hesitate and gave quick responses."

A jury found Lehman guilty as charged. For first-degree sodomy, victim under twelve years old, Lehman was sentenced to twenty years in prison. For first-degree sexual abuse, victim under twelve years old, Lehman was sentenced to five years in prison. As recommended by the jury, the trial court adjudicated the sentences to run concurrently. This appeal followed.

Lehman brings two unpreserved issues on appeal. First, Lehman claims that the jury instructions violated both his right to a unanimous verdict and against double jeopardy. Second, he claims that the trial court erred when it allowed impermissible expert and veracity testimony from Detective Jones.

## ANALYSIS

Because Lehman's claims for relief are unpreserved, he requests palpable error review. Under RCr 10.26,[2] if an unpreserved error is found to be palpable and if it affects the substantial rights of the defendant, the appellate court may grant appropriate relief if manifest injustice has resulted from the error. An

---

[2] RCr 10.26 states:

A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

error is palpable when it is "easily perceptible, plain, obvious and readily noticeable."[3] The error must be "so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process."[4] Manifest injustice is found only where, after consideration of the record, the defect alleged was "shocking or jurisprudentially intolerable" and where "the error seriously affect[ed] the fairness, integrity, or public reputation of the proceeding."[5]

Lehman's arguments are addressed in turn.

## I. The jury instructions did not present a unanimous jury verdict violation.

Lehman argues that because neither the sodomy or sexual abuse jury instructions contained a description of Lehman's specific criminal acts, the instructions' reliance on the statutory definitions alone did not distinguish between his criminal acts, resulting in unanimous verdict[6] and double jeopardy[7] violations.

---

[3] *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006) (quoting *Burns v. Level,* 957 S.W.2d 218, 222 (Ky. 1997)).

[4] *Martin v. Commonwealth*, 207 S.W.3d 1, 5 (Ky. 2006).

[5] *Id.* at 4 (quoting *United States v. Cotton*, 535 U.S. 625, 631 (2002)).

[6] Section 7 of the Kentucky Constitution guarantees criminal defendants the right to unanimous jury verdicts. *Wells v. Commonwealth*, 561 S.W.2d 85, 87 (Ky. 1978).

[7] The double jeopardy clause of the Fifth Amendment guarantees that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.

The first-degree sodomy instruction stated:

You will find the Defendant guilty of First-Degree **Sodomy** under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county before the finding of the indictment herein and between June 25, 2016 and October 30, 2020 he engaged in a continuing course of conduct resulting in his having **deviate sexual intercourse** with [J.A.] no less than two times;

AND

B. That at the time of each such occurrence [J.A.] was less than twelve years old.[8]

Pursuant to KRS 510.010(1), "deviate sexual intercourse" was defined as "any act of sexual gratification involving the sex organs of one person and the mouth or anus of another."

The first-degree sexual abuse instruction stated:

You will find the Defendant guilty of First-Degree **Sexual Abuse** under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county before the finding of the indictment herein and between June 25, 2016 and October 30, 2020 he engaged in a continuing course of conduct resulting in his subjecting [J.A.] to **sexual contact** no less than two times;

AND

B. That at the time of each such contact [J.A.] was less than twelve years old.[9]

---

[8] Emphasis added.

[9] Emphasis added.

Pursuant to KRS 510.010(7), "sexual contact" was defined as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying the sexual desire of either party."[10]

Although unanimous verdict violations may occur in different ways, "as a general principle . . . a violation occurs when a verdict is returned based upon jury instructions and verdict forms that provide no assurance that all of the jurors based their finding of guilt on the same event."[11] Here, Lehman argues that the "multiple acts" unanimous jury verdict violation is applicable to his case, and that violation also resulted in a double jeopardy violation.

*Justice v. Commonwealth*[12] recently explained the "multiple acts" unanimous jury verdict violation and the double jeopardy violation that is often present with the unanimity violation as follows:

> A unanimous jury verdict problem often arises when a jury instruction is satisfied by multiple criminal acts. When multiple acts of conduct for which the defendant could be convicted are not sufficiently distinguished in the jury instructions, it becomes unclear on which conduct the jury is convicting the defendant. As a result, when a conviction is returned, we cannot be assured that 12 jurors all agreed that the same conduct warranted a conviction. This violates a defendant's right to an unanimous verdict. . . .
> Further, jury instructions that fail to meet the unanimity requirement are usually accompanied by a double-jeopardy violation. If the conduct is not distinguished in the jury instructions, but evidence would allow a reasonable jury to find the defendant guilty of two different crimes, there is no way to know

---

[10] The definition for "sexual contact" was subsequently amended in 2023. *See* 2023 Ky. Acts ch. 34, § 2 (eff. June 29, 2023).

[11] *Elam v. Commonwealth*, 500 S.W.3d 818, 826 (Ky. 2016) (citing *Johnson v. Commonwealth*, 405 S.W.3d 439, 449 (Ky. 2013); *Ruiz v. Commonwealth*, 471 S.W.3d 675, 678 (Ky. 2015)).

[12] 636 S.W.3d 407, 416 (Ky. 2021), *abrogated on other grounds by Sexton v. Commonwealth*, 647 S.W.3d 227 (Ky. 2022) (internal citations omitted).

the jury did not use the same conduct to satisfy both convictions. So, the jury instructions must require the jury to distinguish the conduct forming the basis of conviction to ensure that all twelve jurors agree that a specific act warrants a conviction and so that the jury does not punish the defendant for the same conduct twice.

In regard to the unanimous jury verdict violation, Lehman argues specifically that when the jury determined that he engaged in deviate sexual intercourse, i.e., touched J.A.'s anus with his penis, that conduct also fell within the definition for sexual contact. Therefore, one cannot be sure from the verdicts that all twelve jurors agreed Lehman's conviction for sodomy was not based on the same conduct that supported the conviction for sexual abuse. In terms of double jeopardy, Lehman similarly argues that there is no means to ensure that the jury did not use the same conduct in order to find Lehman guilty of both sodomy and sexual abuse and therefore convict him twice for the same behavior.

While citing *Commonwealth v. Taylor*, 477 S.W.3d 592, 597 (Ky. 2015), for the premise that the first step in palpable error review is to determine whether an error occurred, the Commonwealth asserts that there is no need for this Court to decide whether the jury instructions in this case created a unanimity or double-jeopardy error, because even assuming the instructions created an error, palpable error relief is not warranted. In *Johnson v. Commonwealth*,[13] as to unpreserved unanimity questions, this Court recently explained:

> In all cases presenting an unpreserved error regarding a unanimous jury, the courts must "plumb the depths of the

_____

[13] 676 S.W.3d 405, 417 (Ky. 2023) (internal citations omitted).

8

proceeding" and scrutinize the factual idiosyncrasies of the individual case. That includes a consideration of the weight of the evidence. Only if, upon review, a court can conclude "the error is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process," will reversal be warranted. "It should be so egregious that it jumps off the page . . . and cries out for relief."

The Commonwealth argues that the weight of the evidence shows that no palpable error occurred in regard to either the alleged unanimity or double jeopardy issues. The Commonwealth points out that J.A. testified to two types of touching, two different types of attacks Lehman perpetrated against her, and that the Commonwealth distinguished between the sexual abuse instruction (when Lehman touched J.A. with his hands) and the sodomy instruction (when Lehman touched J.A.'s anus with his penis) during closing argument. Citing *Johnson*,[14] the Commonwealth asserts that because none of the evidence is "confusing or complex," it is impossible for a court to determine "that but for the instructional error, there is a substantial possibility of a different result," so no palpable error occurred.

While we agree with the Commonwealth that none of the evidence is confusing or complex, we note in regard to the role the Commonwealth asserts its closing argument may play in remedying an instructional error, this Court previously explained in *Dixon v. Commonwealth*[15] that "the arguments of counsel are not sufficient to rehabilitate otherwise erroneous or imprecise jury instructions" because the arguments of counsel are not evidence.

---

[14] 676 S.W.3d at 418.

[15] 263 S.W.3d 583, 593 (Ky. 2008).

Nevertheless, because we conclude that the instructions did not present a "multiple acts" unanimous verdict violation or a double jeopardy problem because the instructions adequately differentiated the two offenses, we agree with the Commonwealth that palpable error relief is not warranted.

As a starting point, it has long been understood, as this Court explained in *Miller v. Commonwealth*,[16] that "a trial court errs in a case involving multiple charges if its instructions to the jury fail to factually differentiate between the separate offenses according to the evidence."[17]  In *Miller*, based upon that premise, the Court concluded palpable error occurred when the trial court used identical jury instructions for the six (6) counts of third-degree rape and two (2) counts of third-degree sodomy, making none of the counts distinguishable from the others as to what factually distinct crime each applied to.[18]

Soon thereafter, in *Banks v. Commonwealth*,[19] a case in which the appellant was convicted of the nine counts of first-degree sodomy,[20] the Court applied *Miller* to the appellant's claim that "the jury instructions pertaining to the sodomy counts insufficiently distinguished the incidents so as to assure a unanimous verdict as to the convictions"[21]  The Court agreed that two of the

---

[16] 283 S.W.3d 690 (Ky. 2009).

[17] *Id*. at 695 (citing *Combs v. Commonwealth*, 198 S.W.3d 574, 580 (Ky. 2006)).

[18] *Id*. at 694, 695-96.

[19] 313 S.W.3d 567 (Ky. 2010).

[20] *Id*. at 570.  Banks was also found guilty of five counts of incest, and four counts of first-degree sexual abuse.  *Id*.

[21] *Id*. at 571.

instructions used terms which created an overlap in time and conduct and violated the distinguishment requirements of *Miller*.[22]

This Court further explained:

> An examination of *Miller* discloses that its principal purpose is to ensure that the instructions for each count are distinguishable enough to permit the jury to relate each verdict to a specific crime shown by the evidence. Clearly, simply varying the words of the instruction for each count, without any substantive difference in meaning, does not satisfy *Miller*. However, the test is not simply one of mutual exclusivity. So long as the instruction for each count enables the jury to identify the instruction with a specific crime established by the evidence and avoids the likelihood of confusion with other offenses presented against defendant in the same trial, then the instructions are adequately differentiated.[23]

Here, there were two types of conduct at issue: Lehman inserting his penis in J.A.'s anus and Lehman touching J.A.'s private parts, and two instructions. The sodomy instruction, which itself contained the term "sodomy" and defined "deviate sexual intercourse" as "any act of sexual gratification **involving the sex organs of one person** and **the** mouth or **anus of another**,"[24] enabled the jury to identify this instruction with the evidence that Lehman put his penis in J.A.'s anus. The sexual abuse instruction, defining "sexual contact" as "**any touching of the sexual or other intimate parts of a person** done for the purpose of gratifying the sexual desire of either

---

[22] *Id.* at 573.

[23] *Id.* at 573.

[24] Emphasis added.

party,"[25] enabled the jury to identify this instruction with the evidence that Lehman touched J.A.'s private parts.

Although Lehman's specific acts were not incorporated into the text of the instructions, as prescribed in *Banks*, the instruction for each count enabled the jury to identify the instruction with a specific crime established by the evidence, avoiding likelihood of confusion for which instruction went the alleged criminal conduct. A reasonable jury undoubtedly understood the sodomy instruction related to Lehman inserting his penis in J.A.'s anus and the sexual abuse instruction related to Lehman touching J.A.'s sexual parts, referred to as her "private area" at trial. Neither the facts nor the instructions were confusing. In light of the differentiation between the two instructions and the ease of pairing each of Lehman's two types of criminal conduct with the instructions, the instructions did not present unanimous verdict or double jeopardy violations.[26]

---

[25] Emphasis added.

[26] *See also Benet v. Commonwealth,* 253 S.W.3d 528, 536-37 (Ky. 2008). Comparable to Lehman's argument here, Benet contended that his convictions fell within the double jeopardy prohibition because the sexual abuse conviction was a lesser included offense of the sodomy conviction in that a person cannot commit sodomy without also committing the offense of sexual abuse. This Court explained that Benet's argument ignored the fact that his touching of the victim's genitals through the victim's clothing is an entirely separate act and offense than his orally sodomizing the victim and rejected Benet's double-jeopardy argument.

12

II.    **If the trial court erred when allowing Detective Jones to testify about the reason he did not seek a medical evaluation of J.A. or about Vicky's veracity during her interview, the error did not result in manifest injustice.**

Lehman complains that Detective Jones's testimony related to reasons he did not seek a medical exam of J.A. constituted impermissible expert testimony and his testimony related to the truth of Vicky's statements constituted impermissible veracity testimony. The Commonwealth argues that even if the admissions of both statements were in error, the admissions do not constitute palpable error.

Under Kentucky Rule of Evidence (KRE) 701, a lay witness may provide opinion testimony only if their opinion is (1) based on their perception; (2) helpful to a clear understanding of the witness' testimony or the determination of a fact at issue; and (3) not based on scientific, technical, or specialized knowledge.[27] In the context of law enforcement officers providing opinions, we have stated that officers "may provide lay opinion testimony as to their experience-based interpretations of certain facts which they personally observed."[28]

Lehman, citing *Whaley v. Commonwealth*,[29] argues that testimony about identifying and explaining medical evidence and the presence or absence of injuries in child sexual assault cases requires specialized knowledge and does

---

[27] *Carson v. Commonwealth*, 621 S.W.3d 443, 446 (Ky. 2021).

[28] *Id.* at 447 (citing *Iraola-Lovaco v. Commonwealth*, 586 S.W.3d 241, 247 (Ky. 2019); *Burton v. Commonwealth,* 300 S.W.3d 126, 140 (Ky. 2009)).

[29] 567 S.W.3d 576, 589 (Ky. 2019).

not fall within lay opinion testimony. In *Whaley*, this Court concluded that the victim's examining physician was qualified under KRE 702 as an expert due to her knowledge, experience and training and consequently the trial court did not abuse its discretion by allowing the physician to testify to her opinion that she would not necessarily expect to see injury with anal sodomy.[30]

Lehman argues that unlike the *Whaley* witness, Detective Jones was not qualified as an expert, pointing out that he did not testify about how many sexual abuse or sexual assault cases he worked in his career which would provide a sufficient experiential basis for understanding medical data and whether a physical exam would yield any evidence, making the admission of his testimony erroneous. The Commonwealth, on the other hand, views *Whaley* as supporting the admission of Detective Jones's testimony because the Court did not hold that this type of testimony requires exact medical credentials, but that the *Whaley* witness was qualified to give her opinion because of her "knowledge, experience, and training." Here, the Commonwealth asserts that Detective Jones qualified as an expert, even if the court did not certify him as one, because he has sufficient experience in law enforcement — working in law enforcement since 1980 and investigating sex crimes while serving as a military police investigator — to explain whether he expected to find any physical evidence or not.

---

[30] *Id.*

As to evidence of manifest injustice resulting from the trial court allowing Detective Jones's testimony into evidence, Lehman contends that there was minimal evidence supporting A.J.'s allegations; for example, there was no physical evidence or eyewitness corroboration. Lehman further argues that the fact that A.J. was not medically evaluated was significant and the Commonwealth being allowed to explain that circumstance away through an officer's nonexpert testimony amounted to significant prejudice to Lehman.

We view *Whaley* as supporting Lehman's argument that Detective Jones's opinion testimony, without foundational testimony, went beyond lay testimony and fell more within the realm of scientific, technical, or specialized knowledge. However, we do not conclude that any error warrants palpable error relief. As the Commonwealth points out, the jury heard J.A.'s testimony that Lehman sodomized her, Ruthie's testimony that J.A. came to her after August 2020 and told her that her butt hurt, and that Lehman had confessed to touching J.A. Given the evidence, the inclusion of Detective Jones's testimony did not result in manifest injustice.

Finally, Lehman also argues that it was inappropriate for the Commonwealth to ask Detective Jones his opinion about the truthfulness of Vicky's recorded statement. In *Moss v. Commonwealth*,[31] and again recently in *Carson*,[32] we explained that neither lay nor expert testimony is appropriate regarding the veracity of a witness.

---

[31] 949 S.W.2d 579, 583 (Ky. 1997).

[32] 621 S.W.3d at 447.

15

"With few exceptions, it is improper to require a witness to comment on the credibility of another witness. A witness's opinion about the truth of the testimony of another witness is not permitted. Neither expert nor lay witnesses may testify that another witness or a defendant is lying or faking. That determination is within the exclusive province of the jury."[33]

While the Commonwealth's question may be viewed as improper under *Moss,* we conclude that the error did not result in manifest injustice. The jury had the opportunity to both watch Vicky's recorded statements to Detective Jones, when she stated that Lehman called himself a "monster" and wanted to kill himself, and to weigh her credibility when testifying at trial. Furthermore, the Commonwealth reminded the jury during closing argument that either Vicky lied to Detective Jones or lied during her testimony, but that was for the jury to decide.

## **CONCLUSION**

For the foregoing reasons, the Hardin Circuit Court's judgment is affirmed.

All sitting. VanMeter, C.J.; Bisig, Conley, Keller, Lambert, and Nickell, JJ., concur. Thompson, J., concurs in result only.

---

[33] *Moss*, 949 S.W.2d at 583 (quoting *State v. James*, 557 A.2d 471, 473 (R.I. 1989)).

16

COUNSEL FOR APPELLANT:

Sarah Dickerson Dailey
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Bryan D. Morrow
Assistant Attorney General